PER CURIAM.
We have for consideration the biennial report of proposed rule changes filed by the Florida Bar’s Rules of Judicial Administration Committee (Rules Committee), in accordance with Florida Rule of Judicial Administration 2.130(c)(4). We have jurisdiction. See art. V, § 2(a), Fla. Const.
BACKGROUND
The Rules Committee proposes amendments to Florida Rules of Judicial Administration 2.060, Attorneys; 2.070, Court Reporting; 2.071, Use of Communication Equipment; 2.085, Time Standards for Trial and Appellate Courts; 2.160, Disqualification of Trial Judges; and 2.170, Standards of Conduct and Technology Governing Electronic Media and Still Photography Coverage of Judicial Proceedings. In accordance with Florida Rule of Judicial Administration 2.130(c)(2), the Rules Committee submitted its proposals to the Board of Governors of the Florida Bar and published the proposals for comment.[1] The Board of Governors unanimously approved the proposed changes. The proposals submitted to the Court were published for comment and several comments were received addressing the proposed amendments to rules 2.060(b) and 2.085.
AMENDMENTS
After reviewing the Rules Committee’s proposed changes, considering the comments filed, and hearing oral argument, we adopt the amendments to rules 2.070, 2.085, and 2.170 as proposed by the committee. We also adopt the proposed amendments to subdivisions (h), (i) and (j) of rule 2.060 and, with minor modification, the proposed amendments to subdivision (b) of that rule. However, for the reasons explained below, we decline at this time to adopt the proposed amendments to rule 2.071. Although not proposed by the *699 Rules Committee, we also adopt, on an emergency basis, amendments to rules 2.050(c), Selection of Chief Judge; 2.058, Trial Court Budget Commission, and 2.130(c), Schedule for Rule Proposals. See Fla. R. Jud. Admin. 2.130(a). We discuss the substantive amendments in more detail below.
At the request of the Judicial Administration Section of the Conference of Circuit Judges, we amend rule 2.050(c) in order to provide better guidance to the circuits on how to conduct elections for chief judge. As amended, the rule requires that:
(1) All ballots shall be secret.
(2) Any circuit or county judge may nominate a candidate for chief judge.
(3) Proxy voting shall not be permitted.
(4) Any judge who will be absent from the election may vote by secret absentee ballot obtained from and returned to the Trial Court Administrator.
At the suggestion of the Trial Court Budget Commission, we also amend, on an emergency basis, rule 2.053(e) to add the respective chairs of the Conference of Circuit Court Judges and the Conference of County Court Judges as ex officio nonvoting members of the Commission. The Commission believes that having the chairs of the two conferences as members of the Commission should assist in the flow of information between the Commission and the membership of the conferences.
With minor modifications,[2] we adopt the amendments to rule 2.060 as proposed by the Rules Committee. Subdivision (b), which addresses the practice of law by judicial staff, is updated to refer to “staff attorneys, law clerks, and judicial assistants.” Subdivision (b) is further amended to allow any attorney designated by the court to represent the court, or any judge in the judge’s official capacity, in any proceeding in which the court or judge is an interested party. The restriction on former judicial staff “participatfing] in any manner in any proceeding that was docketed in the court during the term of service or prior thereto” is changed to prohibit an attorney formerly employed by a court from representing anyone “in connection with a matter in which the attorney participated personally and substantially as a judicial staff attorney, law clerk, or judicial assistant.” This amendment reconciles the apparent inconsistency between rule 2.060(b) and Rule Regulating the Florida Bar 4-1.12(a). Consistent with rule 4-1.12(a), as amended rule 2.060(b) only precludes representation in connection with those matters in which the attorney participated personally and substantially as a judicial staff attorney or law clerk. The amendment also addresses the Court’s concern with regard to former Supreme Court staff attorneys’ representation of parties in capital cases. The Court was especially concerned about the current rule’s limitations on a former staff attorney’s representation of parties in capital cases. The Court recognized that a Supreme Court staff attorney is not involved in every capital case that is docketed during or prior to the attorney’s term with the Court. Since there is a shortage of attorneys qualified to handle capital cases, the Court did not want to discourage such a *700 valuable reserve of attorneys familiar with this complex area of the law from engaging in such representation. As amended, rule 2.060(b) will allow a former staff attorney to represent a capital defendant even if the defendant’s direct appeal or postconviction proceeding was docketed during or prior to the attorney’s term with the Court, as long as the attorney did not participate personally and substantially in the defendant’s case while at the Court. Finally, in order to avoid confusion and ensure that a former staff attorney or law clerk’s law firm is not unwittingly disqualified from a case, we have added a Court Commentary to subdivision (b) which references Rule Regulating the Florida Bar 4-1.12(c), Imputed Disqualification of Law Firm.[3]
New subdivisions (h) and (i) of rule 2.060, which replace current subdivisions (h) through (j), clarify how an attorney may appear and terminate an appearance in a proceeding. Rule 2.070(e), Transcripts, is amended, as proposed by the Rules Committee, to update the language of the rule to conform with computer-age practices.
The proposed amendment to subdivision (d) of rule 2.071, Use of Communication Equipment, which we do not adopt at this time, would have given the court discretion to use communication equipment to take testimony, over objection by the parties. The Rules • Committee proposed this amendment at the suggestion of the chair of the Family Law Rules Committee in order to relax the rule to allow for more widespread use of communication equipment for testimony in family law hearings in order to reduce the cost of these proceedings as well as to avoid abuses by the parties. Although the Steering Committee on Families and Children in the Court, which filed a comment on this proposal, believes this amendment would be very useful in many cases within the family court division, it points out that, in the context of delinquency proceedings, the amendments to this rule may be inconsistent with this Court’s prior rejection of the use of audiovisual equipment in detention hearings. See Amendment to Florida Rule of Juvenile Procedure 8.100(a), 796 So.2d 470 (Fla.2001). After hearing oral argument, we believe it would be preferable to adopt an amendment that more narrowly focuses on the concerns the proposed amendment was intended to address. We also believe that it may be best to tailor a rule that addresses the use of communication equipment in the various types of substantive cases. Therefore, we decline at this time to adopt the amendments to rule 2.071 and refer the proposed amendments to the various Florida Bar rules committees for consideration. We ask the rules committees to report back to the Court with their recommendations by April 1, 2004.
Turning to the Rules Committee’s proposed amendments to rule 2.085(e)(1), Trial Court Time Standards, we adopt the proposed amendment to subdivision (e)(1)(C), Domestic Relations, which deletes the fourteen-day standard for temporary support or enforcement of support hearings. We also adopt the proposed amendments to the time standards for ju *701 venile delinquency and dependency hearings.[4] The Steering Committee on Families and Children in the Court, which commented on these proposals, supports the proposal that distinct time standards be established for delinquency and dependency cases, but recommends time standards different from those proposed by the Rules Committee for both types of proceedings.[5] At oral argument, the Chair of the Rules Committee, The Honorable Peter D. Webster, indicated that in proposing these time standards his committee deferred to the Juvenile Court Rules Committee’s recommendations. Therefore, at Judge Webster’s suggestion, we have referred the Steering Committee’s recommendations to the Juvenile Court Rules Committee for consideration. We also have asked that committee to consider the Steering Committee’s suggestion that time standards should be adopted for permanency hearings and termination of parental rights proceedings and have encouraged the committee to work with the Steering Committee in developing its recommendations. We have asked the Juvenile Court Rules Committee to submit its recommendations to the Court by January 1, 2004, at which time we will consider whether to further amend the time standards.
Also, on our own motion, we amend rule 2.130(c), Schedule for Rule Proposals, to change the reference from “biannual” to “biennial” and to require the chair of the rules committee to file a response to comments by interested persons filed with the Court.
We amend subdivision (c) of Rule 2.160, Disqualification of Trial Judges, as proposed by the Rules Committee, to require that immediately upon filing a motion to disqualify with the clerk the movant send a copy of the motion to the subject judge. We also adopt the Rules Committee’s proposed amendment to subdivision (e), Time, which resolves any ambiguity as to when the motion to disqualify must be filed or served by changing the word “made” in the first sentence to “filed.” See HIP Health Plan of Florida, Inc. v. Griffin, 757 So.2d 1272, 1273 (Fla. 4th DCA 2000)(not-ing that the use of the term “made” in rule 2.160, which has been interpreted to mean filed rather than served, “may be a trap for the unwary” and urging the Rules Committee to “review the rule with regard to when the motion must be filed or served”); see also Asay v. State, 769 So.2d 974, 980 (Fla.2000)(stating that rule requires a motion to disqualify to be “filed” *702 within a reasonable time not to exceed ten days after discovery of the facts constituting the ground for the motion). Subdivision (e) also is amended to expressly provide that a motion to disqualify may be made orally, provided the motion is promptly reduced to writing and filed. See Stockstill v. Stockstill, 770 So.2d 191 (Fla. 5th DCA 2000)(holding that written motion to recuse judge was timely filed where counsel had made motion orally during trial); Roy v. Roy, 687 So.2d 956 (Fla. 5th DCA 1997)(holding that where perception of bias arose during hearing, counsel correctly moved for disqualification during hearing and later reduced the motion to writing).
Finally, we amend rule 2.170, Standards of Conduct and Technology Governing Electronic Media and Still Photography Coverage of Judicial Proceedings, as proposed by the Rules Committee. Subdivision (a) is amended to add the title “Electronic and Still Photographic Coverage Allowed.” Subdivision (b), Equipment and Personnel, is amended to eliminate references to outdated technology and to give the court discretion regarding the number of cameras permitted in the courtroom. The amendment to subdivision (c), Sound and Light Criteria, eliminates references to outdated technology and deletes the reference to the appendix to the rule, which also is deleted because most equipment mentioned in the appendix is obsolete.
Accordingly, we amend the Florida Rules of Judicial Administration as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The committee notes and court commentary are offered for explanation only and are not adopted as an official part of the rules. The amendments to rules 2.050, 2.053 and 2.130 are effective immediately upon the release of this opinion. However, interested persons shall have thirty days from the date of the opinion in which to file comments concerning those amendments. See Fla. R. Jud. Admin. 2.130(a). The remainder of the amendments shall become effective January 1, 2004, at 12:01 a.m.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
APPENDIX
Rule 2.050. TRIAL COURT ADMINISTRATION
(a) Purpose. The purpose of this rule is to fix administrative responsibility in the chief judges of the circuit courts and the other judges that the chief judges may designate. When these rules refer to the court, they shall be construed to apply to a judge of the court when the context requires or permits.
(b) Chief Judge.
(1) The chief judge shall be a circuit judge who possesses administrative ability.
(2) The chief judge shall exercise administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts. The chief judge shall be responsible to the chief justice of the supreme court. The chief judge may enter and sign administrative orders, except as otherwise provided by this rule.
(3) The chief judge shall be the chief judicial officer of the circuit, shall maintain liaison in all judicial administrative matters with the chief justice of the supreme court, and shall develop an administrative plan for the efficient and proper administration of all courts within that circuit. The plan shall include an administrative organiza *703 tion capable of effecting the prompt disposition of cases; assignment of judges, other court officers, and executive assistants; control of dockets; regulation and use of courtrooms; and mandatory periodic review of the status of the inmates of the county jail. The plan shall be compatible with the development of the capabilities of the judges in such a manner that each judge will be qualified to serve in any division, thereby creating a judicial pool from which judges may be assigned to various courts throughout the state. The administrative plan shall include a consideration of the statistical data developed by the case reporting system. Questions concerning the administration or management of the courts of the circuit shall be directed to the chief justice of the supreme court through the state courts administrator.
(4)The chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment. All judges shall inform the chief judge of any contemplated absences that will affect the progress of the court’s business. If a judge is temporarily absent, is disqualified in an action, or is unable to perform the duties of the office, the chief judge or the chief judge’s designee may assign a proceeding pending before the judge to any other judge or any additional assigned judge of the same court. The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance, and shall advise the chief justice whether or not the approval of the chief judge of the circuit from which the assignment is to be made has been obtained. The assigned judges shall be subject to administrative supervision of the chief judge for all purposes of this rule. When assigning a judge to hear any type of postconviction or collateral relief proceeding brought by a defendant who has been sentenced to death, the chief judge shall assign to such cases the judge who presided over the original proceeding if that judge is active or otherwise available to serve unless otherwise directed by the supreme court. Nothing in this rule shall restrict the constitutional powers of the chief justice of the supreme court to make such assignments as the chief justice shall deem appropriate.
(5) The chief judge may designate a judge in any court or court division of circuit or county courts as “administrative judge” of any court or division to assist with the administrative supervision of the court or division. The designee shall be responsible to the chief judge, shall have the power and duty to carry out the responsibilities assigned by the chief judge, and shall serve at the pleasure of the chief judge.
(6) The chief judge may require the attendance of prosecutors, public defenders, clerks, bailiffs, and other officers of the courts, and may require from the clerks of the courts, sheriffs, or other officers of the courts periodic reports that the chief judge deems necessary.
(7) The chief judge shall regulate the use of courtrooms, regularly examine the dockets of the courts under the chief judge’s administrative supervision, and require a report on the status of the actions on the dockets. The chief judge may take such action as may be necessary to cause the dockets to be made current. The chief judge shall monitor the status of all pending postconviction or collateral relief proceedings brought by defendants who have *704 been sentenced to death and shall take the necessary actions to assure that such cases proceed without undue delay. On July 1 and October 1, 1996, and on the first day of every January, April, July, and October thereafter, the chief judge shall inform the chief justice of the supreme court of the status of all such pending cases.
(8) The chief judge or the chief judge’s designee shall regularly examine the status of every inmate of the county jail.
(9) The chief judge may authorize the clerks of courts to maintain branch county court facilities. When so authorized, clerks of court shall be permitted to retain in such branch court facilities all county court permanent records of pending cases, and may retain and destroy these records in the manner provided by law.
(10) The chief judge shall ensure that no judge presides over a capital case in which the state is seeking the death penalty or collateral proceedings brought by a death row inmate until that judge has served a minimum of 6 months in a felony criminal division and has successfully completed the “Handling Capital Cases” course offered through the Florida College of Advanced Judicial Studies. Each judge must complete the “Handling Capital Cases” course as soon as practicable upon entering the criminal division. Once a judge successfully completes the “Handling Capital Cases” course, the judge must thereafter attend a “refresher” course dining each of the subsequent continuing judicial education reporting periods. The chief justice may waive the course requirement in exceptional circumstances at the request of the chief judge. This requirement shall not preclude a judge from presiding in collateral proceedings in a case in which the judge presided over the trial or an earlier collateral proceeding.
(c) Selection. The chief judge shall be chosen by a majority of the circuit and county court judges within the circuit for a term of 2 years commencing on July 1 of each odd-numbered year, or if there is no majority, by the chief justice, for a term of 2 years. The election for chief judge shall be held no sooner than February 1 of the year during which the chief judge’s term commences beginning July 1. All elections for chief judge shall be by secret bal-lokconducted as follows: Any circuit or county court judge may nominate a-candidate for chief judge-andr-proxy-voting shall be permitted.
(1) All ballots shall be secret.
(2) Any circuit or county judge may nominate a candidate for chief judge.
(3) Proxy voting shall not be permitted.
(4) Any judge who will be absent from the election may vote by secret absentee ballot obtained from and returned to the Trial Court Administrator.
A chief judge may be removed as chief judge by the supreme court, acting as the administrative supervisory body of all courts, or may be removed by a two-thirds vote of the active judges. The purpose of this rule is to fix a 2-year cycle for the selection of the chief judge in each circuit. A chief judge may serve for successive terms. The selection of the chief judge should be based on managerial, administrative, and leadership abilities. A chief judge who is to be temporarily absent shall select an acting chief judge from among the circuit judges. If a chief judge dies, retires, fails to appoint an acting chief judge during an absence, or is unable to perform the duties of the office, the chief justice of the supreme court shall appoint a circuit judge to act as chief judge during the absence or disability, or until a successor chief judge is elected to serve the *705 unexpired term. When the office of chief judge is temporarily vacant pending action within the scope of this paragraph, the duties of court administration shall be performed by the circuit judge having the longest continuous service as a judge or by another circuit judge designated by that judge.
(d) Circuit Court Administrator. Each circuit court administrator shall be selected or terminated by the chief judge subject to concurrence by a majority vote of the circuit and county judges of the respective circuits.
(e) Local Rules and Administrative Orders.
(1) Local court rules as defined in rule 2.020 may be proposed by a majority of the circuit and county judges in the circuit. The judges shall notify the local bar within the circuit of the proposal, after which they shall permit a representative of the local bar, and may permit any other interested person, to be heard orally or in writing on the proposal before submitting it to the supreme court for approval. When a proposed local rule is submitted to the supreme court for approval, the following procedure shall apply:
(A) Local court rule proposals shall be submitted to the supreme court in January of each year. The supreme court may accept emergency proposals submitted at other times.
(B) Not later than February 15 of each year, the clerk of the supreme court shall submit all local court rule proposals to the Supreme Court Local Rules Advisory Committee created by rule 2.130. At the same time, the clerk of the supreme court shall send copies of the proposed rules to the appropriate committees of The Florida Bar. The Florida Bar committees, any interested local bar associations, and any other interested person shall submit any comments or responses that they wish to make to the Supreme Court Local Rules Advisory Committee on or before March 15 of the year.
(C) The Supreme Court Local Rules Advisory Committee shall meet on or before April 15 to consider the proposals and any comments submitted by interested parties. The committee shall transmit its recommendations to the supreme court concerning each proposal, with the reasons for its recommendations, within 15 days after its meeting.
(D) The supreme court shall consider the recommendations of the committee and may resubmit the proposals with modifications to the committee for editorial comment only. The supreme court may set a hearing on any proposals, or consider them on the recommendations and comments as submitted. If a hearing is set, notice shall be given to the chief judge of the circuit from which the proposals originated, the executive director of The Florida Bar, the chair of the Rules of Judicial Administration Committee of The Florida Bar, any local bar associations, and any interested persons who made comments on the specific proposals to be considered. The supreme court shall act on the proposals promptly after the recommendations are received or heard.
(E) If a local court rule is approved by the supreme court, it shall become effective on the date set by that court.
(F) A copy of all local court rules approved by the supreme court shall be indexed and recorded by the clerk of the circuit court in each county of the circuit where the rules are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The chief judge of the circuit may *706 provide for the publication of the rules. The clerk of the supreme court shall furnish copies of each approved local court rule to the executive director of The Florida Bar.
(2) Any judge or member of The Florida Bar who believes that an administrative order promulgated under subdivision (b)(2) of this rule is a court rule or a local rule as defined in rule 2.020, rather than an administrative order, may apply to the Supreme Court Local Rules Advisory Committee for a decision on the question. The decisions of the committee concerning the determination of the question shall be reported to the supreme court, and the court shall follow the procedure set forth in subdivision (D) above in considering the recommendation of the committee.
(8) All administrative orders of a general and continuing nature, and all others designated by the chief judge, shall be indexed and recorded by the clerk of the circuit court in each county where the orders are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The clerk of the circuit court shall furnish copies of each administrative order to the executive director of The Florida Bar. The chief judge shall, on an annual basis, direct a review of all local administrative orders to ensure that the set of copies maintained by the clerk remains current and does not conflict with supreme court or local rules.
(4) All local court rules entered pursuant to this section shall be numbered sequentially for each respective judicial circuit.
(f) Duty to Rule within a Reasonable Time. Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit at the end of each calendar month of each case that has been held under advisement for more than 60 days.
(g) Duty to Expedite Priority Cases. Every judge has a duty to expedite priority cases to the extent reasonably possible. Priority cases are those cases that have been assigned a priority status or assigned an expedited disposition schedule by statute, rule of procedure, case law, or otherwise. Particular attention shall be given to all juvenile dependency and termination of parental rights cases, and to cases involving families and children in need of services.
(h) Neglect of Duty. The failure of any judge, clerk, prosecutor, public defender, attorney, court reporter, or other officer of the court to comply with an order or directive of the chief judge shall be considered neglect of duty and shall be reported to the chief justice of the supreme court. The chief justice may report the neglect of duty by a judge to the Judicial Qualifications Commission, and neglect of duty by other officials to the governor of Florida or other appropriate person or body.
(i) Status Conference after Compilation of Record in Death Cases. In any proceeding in which a defendant has been sentenced to death, the circuit judge assigned to the case shall take such action as may be necessary to ensure that a complete record on appeal has been properly prepared. To that end, the judge shall convene a status conference with all counsel of record as soon as possible after the record has been prepared pursuant to rule of appellate procedure 9.200(d) but before the record has been transmitted. The purpose of the status conference shall be to ensure that the record is complete.
*707 COURT COMMENTARY
1996 Court Commentary. Rule 2.050(h) should be read in conjunction with Florida Rule of Appellate Procedure 9.140(b)(4)(A).
1997 Court Commentary [Rule 2.050(b)(10)]. The refresher course may be a six-hour block during any Florida Court Education Council approved course offering sponsored by any approved Florida judicial education provider, including the Florida College of Advanced Judicial Studies or the Florida Conference of Circuit Judges. The block must contain instruction on the following topics: penalty phase, jury selection, and rule 3.850 proceedings.
Failure to complete the refresher course during the three-year judicial education reporting period will necessitate completion of the original “Handling Capital Cases” course.
2002 Court Commentary. Recognizing the inherent differences in trial and appellate court dockets, the last sentence of subdivision (g) is intended to conform to the extent practicable with appellate rule 9.146(g), which requires appellate courts to give priority to appeals in juvenile dependency and termination of parental rights cases, and in cases involving families and children in need of services.
Rule 2.053. Trial Court Budget Commission
(a) Purpose. The purpose of this rule is to establish a Trial Court Budget Commission that will have the responsibility for developing and overseeing the administration of trial court budgets in a manner which ensures equity and fairness in state funding among the 20 judicial circuits.
(b) Responsibilities. The Trial Court Budget Commission is charged with specific responsibility to:
(1) establish budgeting and funding policies and procedures consistent with judicial branch plans and policies, directions from the supreme court, and in consideration of input from supreme court committees and from the Florida Conference of Circuit Judges and the Florida Conference of County Court Judges;
(2) make recommendations to the supreme court on the trial court component of the annual judicial branch budget request;
(3) advocate for the trial court component of the annual judicial branch budget request and associated statutory changes;
(4) make recommendations to the supreme court on funding allocation formulas and budget implementation and criteria as well as associated accountability mechanisms based on actual legislative appropriations;
(5) monitor trial court expenditure trends and revenue collections to identify unanticipated budget problems and to ensure the efficient use of resources;
(6) recommend statutory and rule changes related to trial court budgets;
(7) develop recommended responses to findings on financial audits and reports from the Supreme Court Inspector General, Auditor General, Office of Program Policy Analysis and Government Accountability, and other governmental entities charged with auditing responsibilities regarding trial court budgeting when appropriate;
(8) recommend to the supreme court trial court budget reductions required by the legislature;
(9) identify potential additional sources of revenue for the trial courts; and
(10) recommend to the supreme court legislative pay plan issues for trial court *708 personnel, except the commission shall not make recommendations as to pay or benefits for judges.
(c) Operational Procedures. The Trial Court Budget Commission will establish operating procedures necessary to carry out its responsibilities as outlined in subdivision (b), subject to final approval by the supreme court. These procedures shall include:
(1) a method for ensuring input from interested constituencies, including the chief judges and trial court administrators of the trial courts, other members of the trial court judiciary, the Judicial Management Council, and other judicial branch committees and commissions; and
(2) a method for appeal of the decisions of the Trial Court Budget Commission. Appeals may be made only by a chief judge on behalf of a circuit. Appeals may be heard only by the Trial Court Budget Commission unless the appeal is based on the failure of the commission to adhere to its operating procedures, in which case the appeal may be made to the supreme court.
(d) Action by Supreme Court or Chief Justice on Recommendations of Trial Court Budget Commission. The supreme court or chief justice, as appropriate, may take any or all of the following actions on recommendations made by the Trial Court Budget Commission:
(1) The adoption of the recommendations of the commission made in accordance with the discharge of its responsibilities listed in subdivision (b) in whole.
(2) The adoption of the recommendations in part and referral of specific issues or questions back to the commission for further study or alternative recommendations.
(e) Membership and Organization. The Trial Court Budget Commission will be composed of 21 voting members appointed by the chief justice who will represent the interests of the trial courts generally rather than the individual interests of a particular circuit or division. The respective chairpersons of the Conference of Circuit Court Judges and the Conference of County Court Judges shall serve as ex officio nonvoting members of the Commission. The chief justice will make appointments to ensure that the broad interests of the trial courts are represented by including members who have experience in different divisions, who have expertise in court operations or administrative matters, and who offer geographic, racial, ethnic, and gender diversity.
(1) The membership must include 14 trial court judges and 7 trial court administrators.
(2) The chief justice will appoint 1 member to serve as chair and 1 member to serve as vice chair, each for a 2-year term.
(8) A supreme court justice will be appointed by the chief justice to serve as supreme court liaison.
(4) No circuit will have more than 2 members on the commission.
(5) The original members of the commission will be appointed as follows:
(A) 7 members shall be appointed for a 2-year term;
(B) 7 members shall be appointed for a 4-year term; and
(C) 7 members shall be appointed for one 6-year term.
All subsequent members will each be appointed for one 6-year term. In the event of a vacancy, the chief justice will appoint a new member to serve for the remainder of the departing member’s term.
(6) The commission may establish subcommittees as necessary to satisfactori *709 ly carry out its responsibilities. Subcommittees may make recommendations only to the commission as a whole. The chair of the commission may appoint a non-commission member to serve on a subcommittee.
(f) Staff Support and Funding. The Office of the State Courts Administrator will provide primary staff support to the commission. Adequate staffing and resources will be made available to the Office of the State Courts Administrator to ensure the commission is able to fulfill its responsibilities as outlined in the rule. Sufficient resources will also be provided for the commission and its subcommittees to meet and otherwise complete its work.
RULE 2.060. ATTORNEYS
(a) Generally. All persons in good standing as members of The Florida Bar shall be permitted to practice in Florida. Attorneys of other states who are not members of The Florida Bar in good standing shall not engage in the practice of law in Florida except to the extent permitted by rule 2.061.
(b) Clerks-and SecretariesStaff Attorneys, Law Clerks, and Judicial Assistants Not to Practice. Except as provided in this subdivision, Nno one serving as a research-aide or secretary staff attorney, law clerk, or judicial assistant to a justice or judge of any court shall practice as an attorney in any court or before any agency of government while continuing in that position, nor participate in any-manner in any proceeding that was docketed-in the eeurt during the term of service-or prior ■thereto. Any attorney designated by the court may represent the court, or any judge in the judge’s official capacity, in any proceeding in which the court or judge is an interested party. An attorney formerly employed by a court shall not represent anyone in connection with a matter in which the attorney participated personally and substantially as a judicial staff attorney, law clerk, or judicial assistant.
(c) Pleadings to Be Signed. Every pleading and other paper of a party represented by an attorney shall be signed by at least 1 attorney of record in that attorney’s individual name whose address, telephone number, including area code, and Florida Bar number shall be stated, and who shall be duly licensed to practice law in Florida or who shall have received permission to appear in the particular case as provided in rule 2.061. The attorney may be required by the court to give the address of, and to vouch for the attorney’s authority to represent, the party. Except when otherwise specifically provided by an applicable rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorney’s knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or other paper had not been served.
(d) Party Not Represented by Attorney to Sign. A party who is not represented by an attorney shall sign any pleading or other paper and state the party’s address and telephone number, including area code.
(e) Form of Signature of Attorney, Party, or Other Person.
(1) The signatures required on pleadings and papers by subdivisions (c) and (d) of this rule may be:
(A) original signatures;
*710 (B) original signatures that have been reproduced by electronic means, such as on electronically transmitted documents or photocopied documents; or
(C) any other signature format authorized by general law, so long as the clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and papers with that signature format.
(2) An attorney, party, or other person who files a pleading or paper by electronic transmission that does not contain the original signature of that attorney, party, or other person shall file that identical pleading or paper in paper form containing an original signature of that attorney, party, or other person (hereinafter called the follow-up filing) immediately thereafter. The follow-up filing is not required if the Supreme Court of Florida has entered an order directing the clerk of court to discontinue accepting the follow-up filing.
(f) Attorney Not to Be Surety. No attorneys or other officers of court shall enter themselves or be taken as bail or surety in any proceeding in court.
(g) Stipulations. No private agreement or consent between parties or their attorneys concerning the practice or procedure in an action shall be of any force unless the evidence of it is in writing, subscribed by the party or the party’s attorney against whom it is alleged. Parol agreements may be made before the court if promptly made a part of the record or incorporated in the stenographic notes of the proceedings, and agreements made at depositions that are incorporated in the transcript need not be signed when signing of the deposition is waived. This rule shall not apply to settlements or other substantive agreements.
(h) Substitution-of Attorneys, — Attorneys for a party may be substituted at any time by order of-court. — No substitute attorney-shall-be permitted to appear in the — absence.of an order.Appearance of Attorney. An attorney may appear in a proceeding in any of the following ways:
(1) By serving and filing, on behalf of a party, the party’s first pleading or paper in the proceeding.
(2) By substitution of counsel, but only by order of court and with written consent of the client, filed with the court. The court may condition substitution upon payment of, or security for, the substituted attorney’s fees and expenses, or upon such other terms as may be just. The chent shall be notified in advance of the proposed substitution and shall consent in writing to the substitu-tiem — The written consent-shall be filed with-the-court.
(3) By filing with the court and serving upon all parties a notice of appearance as counsel for a party that has already appeared in a proceeding pro se or as co-counsel for a party that has already appeared in a proceeding by non-withdrawing counsel.
(i) Withdrawal of Attorney, — An attorney shall not be -permitted to withdraw from an action unless^ the-'Withdrawal is approved by the court. The attorney shall file a motion for that purpose- stating-the-reasons for withdrawal and the client’s address. — A copy of the motion shall be served on the client and adverse parties. The motion shall be-set for hearing and notice of hearing shall be served on the client and adverse parties. Termination of Appearance of Attorney. The appearance of an attorney for a party in a proceeding shall terminate only in one of the following ways:
*711 (1) Withdrawal of Attorney. By order of court, where the proceeding is continuing, upon motion and hearing, on notice to all parties and the client, such motion setting forth the reasons for withdrawal and the client’s last known address.
(2) Substitution of Attorney. By order of court, under the procedure set forth in subdivision (h)(2) of this rule.
(3) Termination of Proceeding. Automatically, without order of court, upon the termination of a proceeding, whether by final order of dismissal, by final adjudication, or otherwise, and following the expiration of any applicable time for appeal, where no appeal is taken.
(j) Addition of Attorneys. After a proceeding has been Sed in a-court, additional attorneys may appear without-securing permission of the court. — All.additional attorneys so appearing shall file -a-netice of appearance with the court and -shaft- serve a-eopy of the notice of appearance-on all parties in the proceeding.
(kj) Law Student Participation. Eligible law students shall be permitted to participate as provided under the conditions of chapter 11 of the Rules Regulating The Florida Bar as amended from time to time.
(Í k) Attorney as Agent of Client. In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the agent of the client, and any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client.
Commentary
1997 Amendment. Originally, the rule provided that the follow-up filing had to occur within ten days. In the 1997 amendment to the rule, that requirement was modified to provide that the follow-up filing must occur “immediately” after a document is electronically filed. The “immediately thereafter” language is consistent with language used in the rules of procedure where, in a somewhat analogous situation, the filing of a document may occur after service. See, e.g., Florida Rule of Civil Procedure 1.080(d) (“All original papers shall be filed with the court either before service or immediately thereafter.”) (emphasis added). “Immediately thereafter” has been interpreted to mean “filed with reasonable promptness.” Miami Transit Co. v. Ford, 155 So.2d 360 (Fla.1963).
The use of the words “other person” in this rule is not meant to allow a nonlawyer to sign and file pleadings or other papers on behalf of another. Such conduct would constitute the unauthorized practice of law.
2003 Amendment. Rule Regulating the Florida Bar 4-1.12(c), which addresses the imputed disqualification of a law firm, should be looked to in conjunction with the rule 2.060(b) restriction on representation by a former judicial staff attorney or law clerk.
RULE 2.070. COURT REPORTING
(a) Definition. “Court reporting” means the act of making a verbatim record of the spoken word, whether by the use of written symbols, stenomask equipment, or electronic devices, in any proceedings pending in any of the courts of this state, including all discovery proceedings conducted in connection therewith, and all proceedings required by statute to be reported by a certified or official court reporter. It does not mean either the act of taking witness statements not intended for use in court as substantive evidence, or the act of electronic recording and transcription of proceedings as provided for in subdivision (g)(3).
*712 (b) When Court Reporting Required. Any proceeding shall be reported, on the request of any party. The party so requesting shall pay the reporting fees, but this requirement shall not preclude the taxation of costs as authorized by law.
(c) Record. When trial proceedings are being reported, no part of the proceedings shall be omitted unless all of the parties agree to do so and the court approves the agreement. When a deposition is being reported, no part of the proceedings shall be omitted unless all of the parties and the witness so agree. When a party or a witness seeks to terminate or suspend the taking of a deposition for the time necessary to seek a court order, the court reporter shall discontinue reporting the testimony of the witness.
(d) Fees. The chief judge shall have the discretion to adopt an administrative order establishing maximum fees for court reporting services not covered in the plan adopted pursuant to subdivision (g). Any such order must make a specific factual finding that the setting of such maximum fees is necessary to ensure access to the courts. Such finding shall include consideration of the number of court reporters in the county or circuit, any past history of fee schedules, and any other relevant factors.
(e) Transcripts. Transcripts of all judicial proceedings, including depositions, shall be uniform in and for all courts throughout the state. The form, size, spacing, and method of typingprinting transcripts are as follows:
(1) All proceedings shall be typed or printed on paper 8% inches by 11 inches in size, prepared for binding at the top on and bound on the left margin.
(2)-All margins-,--measured from the edge of the paper-,-shall- be no more than 1 inch from tho top,-no more than 1 1/8 inches at the left' side and 3/8 inch at the right-side for type or print-of-9 character-s-to-the inch, and no more-than 1 3/4 inches at the left side and]6 inch at the right side for type-or-print of 10 characters to the-inch.'
(32) There shall be no fewer than 25 typed-or printed lines per page and all typing — or—printing—shall—be—double spaced, with all lines numbered 1 through 25, respectively, and with no more than a double space between para-graphslines.
(43) TypeFont size or print shall be 9 or 10 pica, 12-point courier, or comparable-type or print of-bo-fewer than 9 or 10 characters to the inch 12-point Times New Roman print with no less than 56 characters per line on questions and answers unless the text of the speaker ends short of marginal requirements.
(54) Colloquy material shall begin on the same line following the identification of the speaker, with no more than 2 spaces between the identification of the speaker and the commencement of the colloquy. The identification of the speaker in colloquy shall begin no more than 10 spaces from the left margin, and carry-over colloquy shall be indented no more than 5 spaces from the left margin.
(65) Each question and answer shall begin on a separate line no more than 5 spaces from the left margin with no more than 5 spaces from the “Q” or “A” to the text. Carry-over question and answer lines shall be brought to the left margin.
(76) Quoted material shall begin no more than 10 spaces from the left margin with carry-over lines beginning no more than 10 spaces from the left margin.
(87) Indentations of no more than 10 spaces may be used for paragraphs, and all spaces on a line as herein provided *713 shall be used unless the testimonytext of the speaker ends short of marginal requirements.
(98) One-line parentheticals may begin at any indentation. Parentheticals exceeding 1 line shall begin no more than 10 spaces from the left margin, with carry-over lines being returned to the left margin.
(409) Individual volumes of a transcript, including depositions, shall be no more than 200 pages in length, inclusive of the index.
(4410) Deviation from these standards shall not constitute grounds for limiting use of transcripts in the trial or appellate courts.
(f) Reporter as Officer of Court. A court reporter is an officer of the court for all purposes while acting as a reporter in a judicial proceeding or discovery proceeding. The court reporter shall comply with all rules and statutes governing the proceeding that are applicable to court reporters.
(g) Court Reporting Services Provided in Mental Health Proceedings or at Public Expense.
(1) When Reporting Required. All criminal and juvenile proceedings, and any other judicial proceedings required by law or court rule to be reported at public expense, shall be reported.
(2) Circuit Plan. The chief judge, after consultation with the circuit court and county court judges in the circuit, shall enter an administrative order developing and implementing a circuit-wide plan for the court reporting of all proceedings required to be reported at public expense using either full or part time court employees or independent contractors. The plan shall ensure that all court reporting services are provided by qualified persons. This plan may provide for multiple service delivery strategies if they are necessary to ensure the efficient provision of court reporting services. Each circuit’s plan for court reporting services shall be developed after consideration of guidelines issued by the Office of the State Courts Administrator.
(3) Electronic Recording and Transcription of Proceedings Without Court Reporters. A chief judge may enter a circuit-wide administrative order, which shall be recorded, authorizing the electronic recording and subsequent transcription by persons other than court reporters, of any judicial proceedings, including depositions, that are otherwise required to be reported by a court reporter. Appropriate procedures shall be prescribed in the order which shall:
(A) set forth responsibilities for the court’s support personnel to ensure a reliable record of the proceedings;
(B) provide a means to have the recording transcribed, either in whole or in part, when necessary for an appeal or for further use in the trial court; and
(C) provide for the safekeeping of such recordings.
The presiding judge in a specific case, however, may require a court reporter, if available, or either party may provide and pay for the cost of a court reporter. Such court reporter shall be subject to the orders of the court and directions to transcribe the record from all parties.
(4) Grand Jury Proceedings. Testimony in grand jury proceedings shall be reported by a court reporter, but shall not be transcribed unless required by order of court. Other parts of grand jury proceedings, including deliberations and voting, shall not be reported. The court reporter’s work product, including stenographic notes, electronic record *714 ings, and transcripts, shall be filed with the clerk of the court under seal.
(h) Court Reporting Services in Capital Cases. On or before January 1, 2001, the chief judge, after consultation with the circuit court judges in the circuit, shall enter an administrative order developing and implementing a circuit-wide plan for court reporting in all trials in which the state seeks the death penalty and in capital postconviction proceedings. The plan shall require the use of all measures necessary to expedite the preparation of the transcript, including but not limited to:
(1) where available, the use of a court reporter who has the capacity to provide real-time transcription of the proceedings;
(2) if real-time transcription services are not available, the use of a computer-aided transcription qualified court reporter;
(3) the use of scopists, text editors, alternating court reporters, or other means to expedite the finalization of the certified transcript; and
(4) the imposition of reasonable restrictions on work assignments by employee or contract court reporters to ensure that transcript production in capital cases is given a priority.
RULE 2.085. TIME STANDARDS FOR TRIAL AND APPELLATE COURTS
(a) Purpose. Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case.
(b) Case Control. The trial judge shall take charge of all cases at an early stage in the litigation and shall control the progress of the case thereafter until the case is determined. The trial judge shall take specific steps to monitor and control the pace of litigation, including the following:
(1) assuming early and continuous control of the court calendar;
(2) identifying priority cases as assigned by statute, rule of procedure, case law, or otherwise;
(3) implementing such docket control policies as may be necessary to advance priority cases to ensure prompt resolution;
(4) identifying cases subject to alternative dispute resolution processes;
(5) developing rational and effective trial setting policies; and
(6) advancing the trial setting of priority cases, older cases, and cases of greater urgency.
(c) Priority Cases.
(1) In all noncriminal cases assigned a priority status by statute, rule of procedure, case law, or otherwise, any party may file a notice of priority status explaining the nature of the case, the source of the priority status, any deadlines imposed by law on any aspect of the case, and any unusual factors that may bear on meeting the imposed deadlines.
(2) If, in any noncriminal case assigned a priority status by statute, rule of procedure, case law, or otherwise, a party is of the good faith opinion that the case has not been appropriately advanced on the docket or has not received priority in scheduling consistent with its priority case status, that party may seek review of such action by motion for review to the chief judge or to the chief judge’s designee. The filing of such a motion for review will not toll the time for seeking such other relief as may be afforded by the Florida Rules of Appellate Procedure.
(d) Continuances. All judges shall apply a firm continuance policy. Continu- *715 anees should be few, good cause should be required, and all requests should be heard and resolved by a judge. All motions for continuance shall be in writing unless made at a trial and, except for good cause shown, shall be signed by the party requesting the continuance. All motions for continuance in priority cases shall clearly identify such priority status and explain what effect the motion will have on the progress of the case.
(e) Time Standards. The following time standards are hereby established as a presumptively reasonable time period for the completion of cases in the trial and appellate courts of this state. It is recognized that there are cases that, because of their complexity, present problems that cause reasonable delays. However, most cases should be completed within the following time periods:

(1)Trial Court Time Standards.

(A) Criminal.
Felony — 180 days (arrest to final disposition)
Misdemeanor — 90 days (arrest to final disposition)
(B) Civil.
Jury cases — 18 months (filing to final disposition)
Non-jury cases — 12 months (filing to final disposition)
Small claims — 95 days (filing to final disposition)
(C) Domestic Relations.
Uncontested — 90 days (filing to final disposition)
Contested' — 180 days (filing to final disposition)
Temporary support and enforcement of support hearings — 14 days (-from day of request)
(D) Probate.
Uncontested, no federal estate tax return — 12 months (from issuance of letters of administration to final discharge)
Uncontested, with federal estate tax return — 12 months (from the return’s due date to final discharge)
Contested — 24 months (from filing to final discharge)
(E) Juvenile Delinquency-
Detention hearings — 24 hours (arrest to hearing)
Adjudicatory hearing (dependency)— 180 days (filing of petition to final disposition)
Adjudicatory hearing (delinquency)— 90 days (filing of petition or child being taken into custody to final disposition-hearingj
Adjudicatory hearing (child detained) — 21 days (filing of petitiondate of detention to hearing)
(F) Juvenile Dependency-
Disposition hearing (child sheltered)— 88 days (shelter hearing to disposition)
Disposition hearing (child not sheltered) — 180 days
(2) Supreme Court and District Courts of Appeal Time Standards: Rendering a decision — within 180 days of either oral argument or the submission of the case to the court panel for a decision without oral argument
(3) Florida Bar Referee Time Standards: Report of referee — within 180 days of being assigned to hear the case
(4) Circuit Court Acting as Appellate Court:
Ninety days from submission of the case to the judge for review
(f) Reporting of Cases. The time standards require that the following monitoring procedures be implemented:
All pending cases in circuit and district courts of appeal exceeding the time *716 standards shall be listed separately on a report submitted quarterly to the chief justice. The report shall include for each case listed the case number, type of case, case status (active or inactive for civil cases and contested or uncontested for domestic relations and probate cases), the date of arrest in criminal cases, and the original filing date in civil cases. The Office of the State Courts Administrator will provide the necessary forms for submission of this data. The report will be due on the 15th day of the month following the last day of the quarter.
Rule 2.130. PROCEDURE FOR AMENDING RULES
(a) Emergency Amendments. The supreme court, with or without notice, may change court rules at any time if an emergency exists that does not permit reference to the appropriate committee of The Florida Bar for recommendations. If a change is made without reference to the committee, the change may become effective immediately or at a future time. In either event, the court shall fix a date for further consideration of the change. Any person may file comments concerning the change, seeking its abrogation or a delay in the effective date, in accordance with the procedures set forth in subdivision (c)(6) of this rule. The court may allow oral argument in support of such comments by The Florida Bar, by its sections and committees, and by other bar associations. Notice of the hearing on the change and a copy of the change shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The change shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(b) Amendments Generally. The following procedure shall be followed for consideration of rule amendments generally other than those adopted under subdivisions (a), (e), and (f):
(1) Proposals for court rules, amendments to them, or abrogation of them may be made by any person.
(2) Proposals shall be submitted to the clerk of the supreme court in writing and shall include a general description of the proposed rule change or a specified proposed change in content. The clerk of the supreme court shall refer proposals to the appropriate committee under subdivision (b)(3).
(3) The Florida Bar shall appoint the following committees to consider rule proposals: Civil Procedure Rules Committee, Criminal Procedure Rules Committee, Small Claims Rules Committee, Traffic Court Rules Committee, Appellate Court Rules Committee, Juvenile Court Rules Committee, Code and Rules of Evidence Committee, Rules of Judicial Administration Committee, Probate Rules Committee, Workers’ Compensation Rules Committee, and Family Law Rules Committee.
(4) Each committee shall be composed of attorneys and judges with extensive experience and training in the area of practice of the committee calling for regular, frequent use of the rules. The members of the committee shall serve for 3-year staggered terms. The president of The Florida Bar shall appoint the chair and vice chair of each committee.
*717 (5) The Rules of Judicial Administration Committee shall also serve as a rules coordinating committee. Each rules committee shall have at least 1 of its members appointed to the Rules of Judicial Administration Committee to serve as liaison. All proposed rules changes shall be submitted to the Rules of Judicial Administration Committee, which shall then refer all proposed rules changes to those rules committees that might be affected by the proposed change. All proposed changes shall be submitted by June 30 of each year of the rules cycle.
(6) The committees shall consider and vote on each proposal. The committees may originate proposals and are charged with the duty of regular review and reevaluation of the rules to advance orderly and inexpensive procedures in the administration of justice. The committees may accept or reject proposed amendments or may amend proposals. The committees shall keep minutes of their activities, which minutes shall reflect the action taken on each proposal. Copies of the minutes shall be furnished to the clerk of the supreme court, to the board of governors of The Florida Bar, and to the proponent of any proposal considered at the meeting.
(c) Schedule for Rule Proposals.
(1)Each committee shall report all proposed rule changes on a biannualbien-nial basis (with the first cycle starting in 2002). Reports shall be made in even-numbered years by the Appellate Court Rules Committee, the Criminal Procedure Rules Committee, the Code and Rules of Evidence Committee, the Juvenile Court Rules Committee, the Traffic Court Rules Committee, and the Workers’ Compensation Rules Committee. Reports shall be made in odd-numbered years by the Civil Procedure Rules Committee, the Family Law Rules Committee, the Probate Rules Committee, the Rules of Judicial Administration Committee, and the Small Claims Rules Committee.
(2) No later than October 1 of the year prior to each reporting year or such other date as the board of governors of The Florida Bar may set, each reporting committee shall submit all proposed rule changes to the board of governors with the committee’s final numerical voting record on each proposal. Contemporaneously with reporting proposed rule changes to the board of governors, each committee report shall be published on the Internet website of The Florida Bar, and in the Florida Bar Journal or Florida Bar News. Any person desiring to comment upon proposed rule changes shall submit written comments to the appropriate committee chair no later than November 1 of the year prior to each reporting year. Each committee shall consider any comments submitted and thereafter report to the board of governors, no later than December 1 of the year prior to each reporting year, any revisions to the proposed rule changes. Contemporaneously with reporting any revisions to the board of governors, each committee’s revised proposed rule changes shall be published on the Internet website of The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(3) No later than January 1 of each reporting year, the board of governors shall consider the proposals and shall vote on each proposal to recommend acceptance, rejection, or amendment.
(4) No later than February 1 of each reporting year, each committee shall file a report of its proposed rule changes with the supreme court. Each committee may amend its recommendations to coincide with the recommendations of the board of governors or may decline to do so or may amend its recommendations in another manner. Any such amendments shall also *718 be reported to the supreme court. The report shall include:
(A) a list of the proposed changes, together with a detailed explanation of each proposal and the name and address of the proponent of each change if other than the rules committee;
(B) the final numerical voting record of the proposals in the committee;
(C) a report of the action taken by the committee on comments submitted in accordance with subdivision (c)(2);
(D) a report of the action and voting record of the board of governors;
(E) any dissenting views of the committee and, if available, of the board; and
(F) an appendix containing all comments submitted to the committee and a two-column chart setting forth the proposed changes in legislative format in the first column and a brief explanation of each change in the second column.
The report and the proposed rule changes shall be filed with the supreme court, in legislative format, both on paper and in an electronic format approved by the supreme court.
(5)If oral argument is deemed necessary, the supreme court shall establish a date during the month of May or June of each reporting year for oral argument on the proposals. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. If the committee modifies its recommendations after considering comments submitted in accordance with subdivision (c)(2), the recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar News.
(6) Before the date of oral argument, any person may file comments concerning the proposals. All comments and other submissions by interested persons shall be filed with the clerk of the supreme court and served on the chair of the appropriate rules committee, and on the proponent of the rule change if other than the rules committee. The chair of the rules committee shall file a response to all comments within the time period set by the court. All comments and other submissions regarding the rule change proposals, in addition to being filed with the supreme court in paper format, shall also be filed in an electronic format approved by the supreme court. Prior to the date of oral argument and as soon as practicable after the date of filing, the clerk of the supreme court shall publish on the Internet websites of the supreme court and The Florida Bar, all comments and the responses of the chair of the rules committee that have been filed concerning the rule change proposals. All requests or submissions by a rules committee made in connection with a pending rule change proposal shall be filed with the clerk of the supreme court and thereafter published by the clerk of the supreme court on the Internet websites of the supreme court and The Florida Bar.
(7) Orders of the supreme court on said proposals should be adopted in sufficient time to take effect on January 1 of the year following the reporting year. The supreme court may permit motions *719 for rehearing to be filed on behalf of any person, The Florida Bar, any bar association, and the affected committee.
(d) Rejected Proposals. If a committee rejects a proposal, the proponent may submit the proposed rule to the board of governors and shall notify the chair and vice chair of the affected committee of the submission of the proposed rule to the board of governors. Minority reports of committees are allowed and may be submitted to both the board of governors and the supreme court.
(e) Emergency Recommendation by Committee. If, in-the opinion of a committee, a proposal is of an emergency nature, and the board of governors concurs, proposals may be made at any time to the supreme court. If the court agrees that an emergency exists, the court may set a time for oral argument and consideration of the proposal. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(f) Request by Court. The supreme court may direct special consideration of a proposal at times other than those specified in this rule and may require a committee to report its recommendation with the recommendations of the board of governors. All requests or submissions by a rules committee made in connection with a request under this subdivision shall be filed with the clerk of the supreme court. The supreme court may set oral argument on the report at any time. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(g) Local Rules Proposed by Trial Courts. The foregoing procedure shall not apply to local rules proposed by a majority of circuit and county judges in the circuit. The chief justice of the supreme court may appoint a Local Rule Advisory Committee to consider and make recommendations to the court concerning local rules and administrative orders submitted pursuant to rule 2.050(e).
Committee Notes
1980 Amendment. Rule 2.180 is entirely rewritten to codify the procedures for changes to all Florida rules of procedure as set forth by this court in In re Rules of Court: Procedure for Consideration of Proposals Concerning Practice and Procedure, 276 So.2d 467 (Fla.1972), and to update those procedures based on current practice. The Supreme Court Rules Advi *720 sory Committee has been abolished, and the Local Rules Advisory Committee has been established.
RULE 2.160. DISQUALIFICATION OF TRIAL JUDGES
(a) Application. This rule applies only to county and circuit judges in all matters in all divisions of court.
(b) Parties. Any party, including the state, may move to disqualify the trial judge assigned to the case on grounds provided by rule, by statute, or by the Code of Judicial Conduct.
(c) Motion. A motion to disqualify shall be in writing and specifically allege the facts and reasons relied on to show the grounds for disqualification and shall be sworn to by the party by signing the motion under oath or by a separate affidavit. The attorney for the party shall also separately certify that the motion and the chent’s statements are made in good faith. In addition to filing with the clerk, the movant shall immediately send a copy of the motion to the subject judge.
(d) Grounds. A motion to disqualify shall show:
(1) that the party fears that he or she will not receive a fair trial or hearing because of specifically described prejudice or bias of the judge; or
(2) that the judge before whom the case is pending, or some person related to said judge by consanguinity or affinity within the third degree, is a party thereto or is interested in the result thereof, or that said judge is related to an attorney or counselor of record in the cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to the cause.
(e) Time. A motion to disqualify shall be madefiled within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling. Any motion for disqualification made during a hearing or trial must be based on facts discovered during the hearing or trial and may be stated on the record and shall, provided that it is also be-fifed-inpromptly reduced to writing in compliance with subdivision (c), and filed. Such trial-motionsA motion made during hearing or trial may be ruled on immediately.
(f) Determination — Initial Motion. The judge against whom an initial motion to disqualify under subdivision (d)(1) is directed shall determine only the legal sufficiency of the motion and shall not pass on the truth of the facts alleged. If the motion is legally sufficient, the judge shall immediately enter an order granting disqualification and proceed no further in the action. If any motion is legally insufficient, an order denying the motion shall immediately be entered. No other reason for denial shall be stated, and an order of denial shall not take issue with the motion.
(g) Determination — Successive Motions. If a judge has been previously disqualified on motion for alleged prejudice or partiality under subdivision (d)(1), a successor judge shall not be disqualified based on a successive motion by the same party unless the successor judge rules that he or she is in fact not fair or impartial in the case. Such a successor judge may pass on the truth of the facts alleged in support of the motion.
(h) Prior Rulings. Prior factual or legal rulings by a disqualified judge may be reconsidered and vacated or amended by a successor judge based upon a motion for reconsideration, which must be filed within 20 days of the order of disqualification, unless good cause is shown for a delay in *721 moving for reconsideration or other grounds for reconsideration exist.
(i) Judge’s Initiative. Nothing in this rule limits the judge’s authority to enter an order of disqualification on the judge’s own initiative.
RULE 2.170. STANDARDS OF CONDUCT AND TECHNOLOGY GOVERNING ELECTRONIC MEDIA AND STILL PHOTOGRAPHY COVERAGE OF JUDICIAL PROCEEDINGS
(a) Electronic and Still Photographic Coverage Allowed. Subject at all times to the authority of the presiding judge to: (i)control the conduct of proceedings before the court; (ii) ensure decorum and prevent distractions; and (iii) ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the appellate and trial courts of this state shall be allowed in accordance with the following standards of conduct and technology promulgated by the Supreme Court of Florida.
(b) Equipment and Personnel.
(1) Not more thanAt least 1 portable television camera 43m — camera—16mm sound, on 3m (self blimped) or videotape electronic camera), operated by not more than 1 camera person, shall be permitted in any trial or appellate court proceeding. Not more than 2 television cameras, operated-by not-more than 1 camera person eac-hT shall be permitted in any-appellate court proceedingThe number of permitted cameras shall be within the sound discretion and authority of the presiding judge.
(2) Not more than 1 still photographer, using not more than 2 still cameras with not more' than 2-lenses for each cam-er-a^-and related equipment for-print purposes, shall be permitted in any proceeding in a trial or appellate court.
(3) Not more than 1 audio system for radio broadcast purposes shall be permitted in any proceeding in a trial or appellate court. Audio pickup for all media purposes shall be accomplished from existing audio systems present in the court facility. If no technically suitable audio system exists in the court facility, microphones and related wiring essential for media purposes shall be unobtrusive and shall be located in places designated in advance of any proceeding by the chief judge of the judicial circuit or district in which the court facility is located.
(4) Any “pooling” arrangements among the media required by these limitations on equipment and personnel shall be the sole responsibility of the media without calling upon the presiding judge to mediate any dispute as to the appropriate media representative or equipment authorized to cover a particular proceeding. In the absence of advance media agreement on disputed equipment or personnel issues, the presiding judge shall exclude all contesting media personnel from a proceeding.
(c)Sound and Light Criteria.
(1) Only television photographic and audio equipment that does not produce distracting sound or light shall be used to cover judicial proceedings. Specifically, such photographic and audio equipment shall produce no — greater' sound or light than the- equipment designated in the-Appendix-te this " "rule-, when such designated equipment is -in-good- weriang order.- No artificial lighting device of any kind shall be used in connection with the television camera.
(2) Only still camera equipment that does not produce distracting sound or light shall be used to cover judicial proceedings. *722 Specifically, suc-h-still camera equipment shall-produce no ■ greater ^sound or-light than a 35mm Leica “M” Series Rangefinder camera, and nNo artificial lighting device of any kind shall be used in connection with a still camera.
(3) It shall be the affirmative duty of media personnel to demonstrate to the presiding judge adequately in advance of any proceeding that the equipment sought to be used meets the sound and light criteria enunciated in this rule. A failure to obtain advance judicial approval for equipment shall preclude its use in any proceeding.
(d)Location of Equipment Personnel.
(1) Television camera equipment shall be positioned in such location in the court facility as shall be designated by the chief judge of the judicial circuit or district in which such facility is situated. The area designated shall provide reasonable access to coverage. If and when areas remote from the court facility that permit reasonable access to coverage are provided, all television camera and audio equipment shall be positioned only in such area. Videotape recording equipment that is not a component part of a television camera shall be located in an area remote from the court facility.
(2) A still camera photographer shall position himself or herself in such location in the court facility as shall be designated by the chief judge of the judicial circuit or district in which such facility is situated. The area designated shall provide reasonable access to coverage. Still camera photographers shall assume a fixed position within the designated area and, once established in a shooting position, shall act so as not to call attention to themselves through further movement. Still camera photographers shall not be permitted to move about in order to obtain photographs of court proceedings.
(3)Broadcast media representatives shall not move about the court facility while proceedings are in session, and microphones or taping equipment once positioned as required by subdivision (a)(3) shall not be moved during the pendency of the proceeding.
(e) Movement during Proceedings. News media photographic or audio equipment shall not be placed in or removed from the court facility except before commencement or after adjournment of proceedings each day, or during a recess. Neither television film magazines nor still camera film or lenses shall be changed within a court facility except during a recess in the proceeding.
(f) Courtroom Light Sources. With the concurrence of the chief judge of a judicial circuit or district in which a court facility is situated, modifications and additions may be made in light sources existing in the facility, provided such modifications or additions are installed and maintained without public expense.
(g) Conferences of Counsel. To protect the attorney-client privilege and the effective right to counsel, there shall be no audio pickup or broadcast of conferences that occur in a court facility between attorneys and their clients, between co-counsel of a client, or between counsel and the presiding judge held at the bench.
(h) Impermissible Use of Media Material. None of the film, videotape, still photographs, or audio reproductions developed during or by virtue of coverage of a judicial proceeding shall be admissible as evidence in the proceeding out of which it arose, in any proceeding subsequent or collateral thereto, or upon retrial or appeal of such proceedings.
(i) Appellate Review. Review of an order excluding the electronic media from access to any proceeding, excluding cover *723 age of a particular participant, or upon any other matters arising under these standards shall be pursuant to Florida Rule of Appellate Procedure 9.100(d).
APPENDIX
FILM-CAMERAS-16mm Sound- on Film (self blimped)
1t Cinema Products CP-16A-R Sound
2r Arriflex 16mm-16BL Model Sound
3, Frezzolini -16mm (-L1V16) Sound-on
4v Auricon “Cini-Voice” Sound
Sr Auricon ifpro-6QQ^ Sound-
6t General Camera SS-IH Sound
Eclair Model ACL Sound
& General Camera DOS Sound
9r Wilcam Reflex ■16mm Sound
VIDEOTAPE ELECTRONIC CAMERAS
It ■Ikegami HL-77 H-L-33 HL-35 HL-34 HL-51
2t RCA TK46
3t Sony DXC-16QO-Trinioon
4-ASACA ACC-2066
St ■HitaoM SK 80-SK-90
6t Hitachi FP-3030
Tt ■Philips LDK-25
8t Sony-BVR-206 ENG Camera
9, ■Fernseh Vidoo Camera
IOt JVC-8800u ENG Camera
U AKAI CVC-150 VTS-150
42t ■Panasonie WV-3085AIV-3085
43t jyn GC-4800u
VIDEOTAPE RECORDEBS/used with video cameras
It Ikegami 3gQQ
2t Sony 3gQQ
3t Sony BVU-100
4t Ampex Video-Recorder
St Panasonie 1 inch Video Recorder
6t JVC 4400
7t 3806H
Commentary
1994 Amendment. This rule was copied from Canon 3A(7) of the Code of Judicial Conduct. Canon 3A(7) represented a departure from former Canon 3A(7) [ABA Canon 35]. The former canon generally proscribed electronic media and still photography coverage of judicial proceedings from within and in areas immediately adjacent to the courtroom, with three categories of exceptions — (a) use for judicial administration, (b) coverage of investitive, ceremonial, and naturalization proceedings, and (c) use for instructional purposes in educational institutions. Subject to the limitations and promulgation of standards as mentioned therein, the revised canon constituted a general authorization for electronic media and still photography coverage for all purposes, including the purposes expressed as exceptions in the former canon. Limited only by the authority of the presiding judge in the exercise of sound discretion to prohibit filming or photographing of particular participants, consent of participants to coverage is not required. The text of the rule refers to public judicial proceedings. This is in recognition of the authority reposing in the presiding judge, upon the exercise of sound discretion, to hold certain judicial proceedings or portions thereof in camera, and in recognition of the fact that certain proceedings or portions thereof are made confidential by statute. The term “presiding judge” includes the chief judge of an appellate tribunal.

. In response to comments it received, the Rules Committee made changes to the proposed amendments to rule 2.060(b) and withdrew a proposed amendment to rule 2.170 that would have permitted a trial judge, in the exercise of discretion and without a hearing, to prohibit the photographing of faces of prospective or seated jurors.

. We have made minor modifications to the proposed amendments to rule 2.060(b) in order to clarify the amendments as suggested by the Florida Trial Court Staff Attorney Association. However, since the Rules Committee did not have an opportunity to consider the comments filed by The Honorable David A. Demers, Chief Judge of the Sixth Judicial Circuit, we ask the Rules Committee to consider those comments and to seek input on these amendments from all chief judges and to report back to the Court with any further amendments to this rule the Rules Committee deems necessary.

. Rule 4-1.12(c) provides:
Imputed Disqualification of Law Firm. If a lawyer is disqualified by subdivision (a), ho lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless:
(1) the disqualified lawyer is screened from any participation in the matter and is directly apportioned no part of the fee therefrom; and
(2) written notice is promptly given to the appropriate tribunal to enable it to ascertain compliance with the provisions of this rule.

. The amendments to subdivision (e)(1)(E) and new subdivision (e)(1)(F) provide (shown by underlining and struck-through type):
(E) Juvenile Delinquency.
Detention hearings — 24 hours- (arrest-to hearing)
Adjudicatory hearing (dependency) — 480 days (filing- of petition to final disposition)
Adjudicatory hearing (delinquency) — 90 days (filing of petition or child being taken into custody to final dispositionhearing)
Adjudicatory hearing (child detained) — 21 days (filing-of petitiondate of detention to hearing)
(F) Juvenile Dependency.
Disposition hearing (child sheltered) — 88 days (shelter hearing to disposition)
Disposition hearing (child not sheltered) — 180 days

. The Steering Committee recommends the following time standards for delinquency proceedings:
Disposition hearing — 120 days (filing of petition or child being taken into custody hearing)
Disposition hearing (child detained) — 36 days (date of detention to hearing)
It recommends the following standards for dependency proceedings:
Disposition hearing (child sheltered) — 88 days (shelter hearing to disposition) Disposition hearing (child not sheltered)— 120 days (filing of petition for dependency to disposition hearing)