915 So.2d 157 (2005)
In re AMENDMENTS TO THE RULES OF JUDICIAL ADMINISTRATION (TWO-YEAR CYCLE).
No. SC05-173.
Supreme Court of Florida.
November 3, 2005.
Honorable Winifred J. Sharp, Chair, Florida Rules of Judicial Administration Committee, Daytona Beach, FL, Honorable Claudia Rickert Isom, Past Chair, Plant City, FL, John F. Harkness, Executive Director, J. Craig Shaw, Liaison, The Florida Bar, Tallahassee, FL, for Petitioner.
*158 Honorable Scott M. Bernstein, Circuit Judge, Eleventh Judicial Circuit, Miami, FL, for Proponent.
Gregg D. Thomas and Carol Jean Locicero of Holland and Knight, LLP, Tampa, FL, on behalf of Media General Operations, Inc.; Jonathan D. Kaney, Jr., General Counsel, First Amendment Foundation, Tallahassee, FL, John R. Hargrove and Dana J. McElroy of Gordon, Hargrove and James, P.A., on behalf of Sunbeam Television Corporation, and Karen Williams Kammer of Mitrani, Rynor and Adamsky, P.A., on behalf of Post-Newsweek Stations Florida, Inc., for Opponent.
PER CURIAM.
We have for consideration the biennial report of proposed rule amendments filed by The Florida Bar's Rules of Judicial Administration Committee (Rules Committee), in accordance with Florida Rule of Judicial Administration 2.130(c)(4). We have jurisdiction. See art. V, § 2(a), Fla. Const.

BACKGROUND
The Rules Committee proposes amendments to Florida Rules of Judicial Administration 2.050, Trial Court Administration; 2.051, Public Access to Judicial Branch Records; 2.060, Attorneys; 2.085, Time Standards for Trial and Appellate Courts; 2.130, Procedure for Amending Rules; and 2.170, Standards of Conduct and Technology Governing Electronic Media and Still Photography Coverage of Judicial Proceedings. In accordance with Florida Rule of Judicial Administration 2.130(c)(2), the Rules Committee submitted its proposals to the Board of Governors of The Florida Bar and published the proposals for comment. The Board of Governors unanimously approved the proposed changes. The Rules Committee received comments concerning the proposed amendments to rules 2.051, 2.060, and 2.170, but did not make any changes to its proposals in response to the comments received. The Court also published the proposed amendments for comment. The Court received comments addressing the proposed amendments to rules 2.051 and 2.170, which are basically the same as the comments received by the Rules Committee.
At the request of the Court, the Appellate Court Rules Committee, the Civil Procedure Rules Committee, the Criminal Procedure Rules Committee, the Family Law Rules Committee, the Juvenile Court Rules Committee, the Probate Rules Committee, the Small Claims Rules Committee, and the Traffic Court Rules Committee filed reports addressing amendments to Rule of Judicial Administration 2.071, Use of Communication Equipment, that were proposed by the Rules of Judicial Administration Committee in its 2003 regular-cycle rules submission. On its own motion, the Court considered the proposed amendments to rule 2.071 together with the 2005 regular-cycle proposals.

AMENDMENTS
After reviewing the Rules Committee's 2005 proposed amendments, considering the comments filed concerning those proposals, and hearing oral argument, we adopt all the 2005 proposals, except the proposed amendments to rule 2.170. We also adopt the 2003 proposed amendment to rule 2.071(c), Use of Communication Equipment; Use Only by Requesting Party. However, after considering the comments filed by the various rules committees, we again decline to adopt the proposed amendment to subdivision (d), Use of Communication Equipment; Testimony. Each of the substantive amendments is discussed in more detail below.
*159 We amend subdivision (e) of rule 2.050, Local Rules and Administrative Orders, as proposed by the Rules Committee, to delete the requirement that circuit court clerks furnish copies of administrative orders to the executive director of The Florida Bar.
We also amend rule 2.051, Public Access to Judicial Branch Records, as proposed by the Rules Committee, with the addition of a court commentary in response to a comment filed with the Court by Media General Operations.[1] The amendments address concerns identified by the Court in Media General Convergence, Inc. v. Chief Judge of the Thirteenth Judicial Circuit, 840 So.2d 1008 (Fla.2003) (noting that rule 2.051 does not provide sufficient guidance for resolving disputes concerning access to judicial records and does not set forth a specific procedure for the appellate court to engage in an in-camera inspection). As amended, subdivision (d)(1) (Review of Denial of Access Request) and subdivision (e)(2) (Procedure) of the rule require (1) the judge denying access to judicial records to file a sealed copy of the requested records when ordered to do so by the appellate court, and (2) the custodian of the records to state in writing the basis for the denial. These requirements will provide the reviewing court with express reasons for the denial of a public records request and will allow the court to conduct an in-camera inspection of the documents. At the suggestion of Media General Operations,[2] a petitioner in Media General Convergence, we add a court commentary recognizing appellate courts' inherent authority to appoint a special magistrate to serve as commissioner for the appellate court to make findings of fact and oversee discovery in proceedings under this rule. Cf. State ex rel. Davis v. City of Avon Park, 117 Fla. 565, 158 So. 159 (1934) (recognizing appellate courts' inherent authority to do all things reasonably necessary for administration of justice within the scope of courts' jurisdiction, including the appointment of a commissioner to make findings of fact); Wessells v. State, 737 So.2d 1103 (Fla. 1st DCA 1998) (relinquishing jurisdiction to circuit court for appointment of a special master to serve as commissioner for court to make findings of fact).
The amendment to rule 2.060(b), retitled Persons Employed by the Court Not to Practice, clarifies that the prohibition against engaging in the practice of law applies to all full-time court employees. The amendment also adds court employees acting in their official capacity as individuals to whom legal representation may be provided. Consistent with the provisions of Rule Regulating the Florida Bar 4-1.12, *160 the amendment to rule 2.060(b) further clarifies that the prohibition against an attorney formerly employed by a court representing anyone in connection with a matter in which the attorney participated personally and substantially while employed by the court may be waived after full disclosure and the consent of all parties.
New rule 2.085(d), Related Cases, is adopted in response to the Family Court Steering Committee's[3] year 2000 recommendations for implementing unified family courts in Florida. See In re Report of the Family Court Steering Committee, 794 So.2d 518 (Fla.2001). The new rule implements the Steering Committee's recommendation that the Court adopt a rule of judicial administration that would "require judges who are assigned to different cases involving the same family to confer, and to coordinate pending litigation to maximize judicial efforts, avoid inconsistent court orders, and avoid multiple court appearances by the parties on the same issues." Id. at 526. Consistent with this recommendation, the new subdivision creates a procedure for the filing of notice of related cases by a petitioner in a family case if related cases are known or reasonably ascertainable.
In order to ensure that the Legislature is included in the rulemaking process, subdivisions (a), (c)(2), (c)(5), (e), and (f) of rule 2.130, Procedure for Amending Rules, are amended to add the Speaker of the Florida House of Representatives, the President of the Senate, and the chairs of the House and Senate committees as designated by the Speaker and the President as individuals required to receive notices of hearings, copies of rules changes, committee reports, revised proposed rules changes, and notices of oral argument on proposed rule changes. The Court, on its own motion, has added language to subdivisions (a), (c)(5), (e), and (f) recognizing that the Clerk of the Supreme Court may provide notice required under those subdivisions electronically.
The changes to rule 2.130(c), Schedule for Rule Proposals, were recommended by the Rules Committee because it determined that the current two-year cycle for rules changes, which was adopted in 2000,[4] has proved impractical and has "overwhelmed" the volunteer rules committees by "overly compacting" the regular cycle rule-making process. The major amendment is to subdivision (c)(1), which changes the regular cycle for proposed rule amendments from a staggered two-year cycle to a staggered three-year cycle. The new cycle commences in 2006, with the various rules committees divided into three groups for reporting purposes.
On our own motion, we delete the references to the Workers' Compensation Rules Committee in subdivisions (b)(3) and (c)(1) of rule 2.130. The repeal of the Rules of Workers' Compensation Procedure eliminates the need for that committee. See Amendments to the Fla. Rules of Workers' Compensation Procedure., 891 So.2d 474 (Fla.2004).
We decline to adopt proposed new rule 2.170(b), Photographing Jurors Faces,[5] *161 which the media[6] and the First Amendment Foundation maintain is inconsistent with decisions of this Court and the Fourth District Court of Appeal.[7] We also decline to adopt proposed new subdivision (a)(iii) of rule 2.170, which would expressly recognize the presiding judge's authority to "protect rights of privacy and prevent disclosure of privileged and confidential matters" in connection with electronic media and still photography coverage of judicial proceedings. We further decline to adopt proposed new rule 2.170(c)(5), which would provide that the "court's security cameras shall be used for security purposes only."
Finally, after considering reports of the various rules committees concerning the 2003 proposed amendment to subdivision (d) of rule 2.071, Use of Communication Equipment, we again decline to adopt that proposal. The proposed amendment would have given the courts discretion to use communication equipment to take testimony, over objection by the parties. The amendment was proposed at the suggestion of the Family Law Rules Committee in order to relax the rule to allow for more widespread use of communication equipment for testimony in family law hearings. See In Amendments to the Fla. Rules of Jud. Admin. (2-year Cycle), 851 So.2d 698, 700 (Fla.2003). In declining to adopt the amendment in 2003, the Court determined that "it would be preferable to adopt an amendment that more narrowly focuses on the concerns the proposed amendment was intended to address." Id. Referring the issue to the various rules committees for consideration, the Court further explained that it "may be best to tailor a rule that addresses the use of communication equipment in the various types of substantive cases," rather than a rule that would apply in all types of cases. Id. Although several committees filed reports supporting the amendment in general or favoring the use of electronic means for receiving testimony under certain limited circumstances, none of the committees offered narrowly drafted proposals that would allow for the use of communication equipment in specific types of cases or under limited circumstances.
Although we again decline to adopt the proposed amendment to subdivision (d) of rule 2.071, we adopt the proposed amendment to subdivision (c) of that rule. The *162 amendment to subdivision (c) exempts "juvenile" proceedings rather than "delinquency" proceedings from the requirement that a request to participate in a motion hearing through communication equipment must be granted, absent a showing of good cause to deny the request, where the motion hearing is set for not longer than fifteen minutes. This change conforms subdivision (c) with subdivision (d)(4) of the rule which addresses the waiver of confrontation rights that may be abridged by the use of communication equipment in "juvenile and criminal proceedings." In response to concerns raised in the comments, we emphasize that the amendment to subdivision (c), which applies to motion hearings, should not be viewed as inconsistent with the Court's prior rejection of the use of audiovisual equipment in delinquency detention hearings. See Amendment to Florida Rule of Juvenile Procedure 8.100(a), 796 So.2d 470 (Fla.2001).

CONCLUSION
Accordingly, we amend the Florida Rules of Judicial Administration as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The committee notes and court commentary are offered for explanation only and are not adopted as an official part of the rules. The amendments to rule 2.130 shall become effective immediately upon the release of this opinion. The amendments to the remaining rules shall become effective January 1, 2006, at 12:01 a.m.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.

APPENDIX

RULE 2.050. TRIAL COURT ADMINISTRATION
(a) Purpose. The purpose of this rule is to fix administrative responsibility in the chief judges of the circuit courts and the other judges that the chief judges may designate. When these rules refer to the court, they shall be construed to apply to a judge of the court when the context requires or permits.
(b) Chief Judge.
(1) The chief judge shall be a circuit judge who possesses administrative ability.
(2) The chief judge shall exercise administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts. The chief judge shall be responsible to the chief justice of the supreme court. The chief judge may enter and sign administrative orders, except as otherwise provided by this rule.
(3) The chief judge shall be the chief judicial officer of the circuit, shall maintain liaison in all judicial administrative matters with the chief justice of the supreme court, and shall develop an administrative plan for the efficient and proper administration of all courts within that circuit. The plan shall include an administrative organization capable of effecting the prompt disposition of cases; assignment of judges, other court officers, and executive assistants; control of dockets; regulation and use of courtrooms; and mandatory periodic review of the status of the inmates of the county jail. The plan shall be compatible with the development of the capabilities of the judges in such a manner that each judge will be qualified to serve in any division, thereby creating a judicial pool from which judges may be assigned to various courts throughout the state. The administrative plan shall include a consideration *163 of the statistical data developed by the case reporting system. Questions concerning the administration or management of the courts of the circuit shall be directed to the chief justice of the supreme court through the state courts administrator.
(4) The chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment. All judges shall inform the chief judge of any contemplated absences that will affect the progress of the court's business. If a judge is temporarily absent, is disqualified in an action, or is unable to perform the duties of the office, the chief judge or the chief judge's designee may assign a proceeding pending before the judge to any other judge or any additional assigned judge of the same court. The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance, and shall advise the chief justice whether or not the approval of the chief judge of the circuit from which the assignment is to be made has been obtained. The assigned judges shall be subject to administrative supervision of the chief judge for all purposes of this rule. When assigning a judge to hear any type of postconviction or collateral relief proceeding brought by a defendant who has been sentenced to death, the chief judge shall assign to such cases a judge qualified to conduct such proceedings under subdivision (b)(10) of this rule. Nothing in this rule shall restrict the constitutional powers of the chief justice of the supreme court to make such assignments as the chief justice shall deem appropriate.
(5) The chief judge may designate a judge in any court or court division of circuit or county courts as "administrative judge" of any court or division to assist with the administrative supervision of the court or division. The designee shall be responsible to the chief judge, shall have the power and duty to carry out the responsibilities assigned by the chief judge, and shall serve at the pleasure of the chief judge.
(6) The chief judge may require the attendance of prosecutors, public defenders, clerks, bailiffs, and other officers of the courts, and may require from the clerks of the courts, sheriffs, or other officers of the courts periodic reports that the chief judge deems necessary.
(7) The chief judge shall regulate the use of courtrooms, regularly examine the dockets of the courts under the chief judge's administrative supervision, and require a report on the status of the actions on the dockets. The chief judge may take such action as may be necessary to cause the dockets to be made current. The chief judge shall monitor the status of all pending postconviction or collateral relief proceedings brought by defendants who have been sentenced to death and shall take the necessary actions to assure that such cases proceed without undue delay. On July 1 and October 1, 1996, and on the first day of every January, April, July, and October thereafter, the chief judge shall inform the chief justice of the supreme court of the status of all such pending cases.
(8) The chief judge or the chief judge's designee shall regularly examine the status of every inmate of the county jail.
(9) The chief judge may authorize the clerks of courts to maintain branch county court facilities. When so authorized, *164 clerks of court shall be permitted to retain in such branch court facilities all county court permanent records of pending cases, and may retain and destroy these records in the manner provided by law.
(10) The chief judge shall ensure that no judge presides over a capital case in which the state is seeking the death penalty or collateral proceedings brought by a death row inmate until that judge has served a minimum of 6 months in a felony criminal division and has successfully completed the "Handling Capital Cases" course offered through the Florida College of Advanced Judicial Studies. Each judge must complete the "Handling Capital Cases" course as soon as practicable upon entering the criminal division. Once a judge successfully completes the "Handling Capital Cases" course, the judge must thereafter attend a "refresher" course during each of the subsequent continuing judicial education reporting periods. The chief justice may waive the course requirement in exceptional circumstances at the request of the chief judge. This requirement shall not preclude a judge from presiding in collateral proceedings in a case in which the judge presided over the trial or an earlier collateral proceeding.
(c) Selection. The chief judge shall be chosen by a majority of the circuit and county court judges within the circuit for a term of 2 years commencing on July 1 of each odd-numbered year, or if there is no majority, by the chief justice, for a term of 2 years. The election for chief judge shall be held no sooner than February 1 of the year during which the chief judge's term commences beginning July 1. All elections for chief judge shall be conducted as follows:
(1) All ballots shall be secret.
(2) Any circuit or county judge may nominate a candidate for chief judge.
(3) Proxy voting shall not be permitted.
(4) Any judge who will be absent from the election may vote by secret absentee ballot obtained from and returned to the Trial Court Administrator.
A chief judge may be removed as chief judge by the supreme court, acting as the administrative supervisory body of all courts, or may be removed by a two-thirds vote of the active judges. The purpose of this rule is to fix a 2-year cycle for the selection of the chief judge in each circuit. A chief judge may serve for successive terms. The selection of the chief judge should be based on managerial, administrative, and leadership abilities. A chief judge who is to be temporarily absent shall select an acting chief judge from among the circuit judges. If a chief judge dies, retires, fails to appoint an acting chief judge during an absence, or is unable to perform the duties of the office, the chief justice of the supreme court shall appoint a circuit judge to act as chief judge during the absence or disability, or until a successor chief judge is elected to serve the unexpired term. When the office of chief judge is temporarily vacant pending action within the scope of this paragraph, the duties of court administration shall be performed by the circuit judge having the longest continuous service as a judge or by another circuit judge designated by that judge.
(d) Circuit Court Administrator. Each circuit court administrator shall be selected or terminated by the chief judge subject to concurrence by a majority vote of the circuit and county judges of the respective circuits.
(e) Local Rules and Administrative Orders.
*165 (1) Local court rules as defined in rule 2.020 may be proposed by a majority of the circuit and county judges in the circuit. The judges shall notify the local bar within the circuit of the proposal, after which they shall permit a representative of the local bar, and may permit any other interested person, to be heard orally or in writing on the proposal before submitting it to the supreme court for approval. When a proposed local rule is submitted to the supreme court for approval, the following procedure shall apply:
(A) Local court rule proposals shall be submitted to the supreme court in January of each year. The supreme court may accept emergency proposals submitted at other times.
(B) Not later than February 15 of each year, the clerk of the supreme court shall submit all local court rule proposals to the Supreme Court Local Rules Advisory Committee created by rule 2.130. At the same time, the clerk of the supreme court shall send copies of the proposed rules to the appropriate committees of The Florida Bar. The Florida Bar committees, any interested local bar associations, and any other interested person shall submit any comments or responses that they wish to make to the Supreme Court Local Rules Advisory Committee on or before March 15 of the year.
(C) The Supreme Court Local Rules Advisory Committee shall meet on or before April 15 to consider the proposals and any comments submitted by interested parties. The committee shall transmit its recommendations to the supreme court concerning each proposal, with the reasons for its recommendations, within 15 days after its meeting.
(D) The supreme court shall consider the recommendations of the committee and may resubmit the proposals with modifications to the committee for editorial comment only. The supreme court may set a hearing on any proposals, or consider them on the recommendations and comments as submitted. If a hearing is set, notice shall be given to the chief judge of the circuit from which the proposals originated, the executive director of The Florida Bar, the chair of the Rules of Judicial Administration Committee of The Florida Bar, any local bar associations, and any interested persons who made comments on the specific proposals to be considered. The supreme court shall act on the proposals promptly after the recommendations are received or heard.
(E) If a local court rule is approved by the supreme court, it shall become effective on the date set by that court.
(F) A copy of all local court rules approved by the supreme court shall be indexed and recorded by the clerk of the circuit court in each county of the circuit where the rules are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The chief judge of the circuit may provide for the publication of the rules. The clerk of the supreme court shall furnish copies of each approved local court rule to the executive director of The Florida Bar.
(2) Any judge or member of The Florida Bar who believes that an administrative order promulgated under subdivision (b)(2) of this rule is a court rule or a local rule as defined in rule 2.020, rather than an administrative order, may apply to the Supreme Court Local Rules Advisory Committee for a decision on the question. The decisions of the committee concerning the determination of the question shall be reported to the supreme court, and the court shall follow the procedure set forth in subdivision *166 (D) above in considering the recommendation of the committee.
(3) All administrative orders of a general and continuing nature, and all others designated by the chief judge, shall be indexed and recorded by the clerk of the circuit court in each county where the orders are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The clerk of the circuit court shall furnish copies of each administrative order to the executive director of The Florida Bar. The chief judge shall, on an annual basis, direct a review of all local administrative orders to ensure that the set of copies maintained by the clerk remains current and does not conflict with supreme court or local rules.
(4) All local court rules entered pursuant to this section shall be numbered sequentially for each respective judicial circuit.
(f) Duty to Rule within a Reasonable Time. Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit at the end of each calendar month of each case that has been held under advisement for more than 60 days.
(g) Duty to Expedite Priority Cases. Every judge has a duty to expedite priority cases to the extent reasonably possible. Priority cases are those cases that have been assigned a priority status or assigned an expedited disposition schedule by statute, rule of procedure, case law, or otherwise. Particular attention shall be given to all juvenile dependency and termination of parental rights cases, and to cases involving families and children in need of services.
(h) Neglect of Duty. The failure of any judge, clerk, prosecutor, public defender, attorney, court reporter, or other officer of the court to comply with an order or directive of the chief judge shall be considered neglect of duty and shall be reported to the chief justice of the supreme court. The chief justice may report the neglect of duty by a judge to the Judicial Qualifications Commission, and neglect of duty by other officials to the governor of Florida or other appropriate person or body.
(i) Status Conference after Compilation of Record in Death Cases. In any proceeding in which a defendant has been sentenced to death, the circuit judge assigned to the case shall take such action as may be necessary to ensure that a complete record on appeal has been properly prepared. To that end, the judge shall convene a status conference with all counsel of record as soon as possible after the record has been prepared pursuant to rule of appellate procedure 9.200(d) but before the record has been transmitted. The purpose of the status conference shall be to ensure that the record is complete.

Court Commentary
1996 Court Commentary. Rule 2.050(h) should be read in conjunction with Florida Rule of Appellate Procedure 9.140(b)(4)(A).
1997 Court Commentary. [Rule 2.050(b)(10)]. The refresher course may be a six-hour block during any Florida Court Education Council approved course offering sponsored by any approved Florida judicial education provider, including the Florida College of Advanced Judicial Studies or the Florida Conference of Circuit Judges. The block must contain instruction on the following topics: penalty phase, jury selection, and rule 3.850 proceedings.
*167 Failure to complete the refresher course during the three-year judicial education reporting period will necessitate completion of the original "Handling Capital Cases" course.
2002 Court Commentary. Recognizing the inherent differences in trial and appellate court dockets, the last sentence of subdivision (g) is intended to conform to the extent practicable with appellate rule 9.146(g), which requires appellate courts to give priority to appeals in juvenile dependency and termination of parental rights cases, and in cases involving families and children in need of services.

RULE 2.051. PUBLIC ACCESS TO JUDICIAL BRANCH RECORDS
(a) Generally. Subject to the rulemaking power of the Florida Supreme Court provided by article V, section 2, Florida Constitution, the following rule shall govern public access to the records of the judicial branch of government. The public shall have access to all records of the judicial branch of government, except as provided below.
(b) Definitions.
(1) "Records of the judicial" branch are all records, regardless of physical form, characteristics, or means of transmission, made or received in connection with the transaction of official business by any judicial branch entity and consist of:
(A) "court records," which are the contents of the court file, including the progress docket and other similar records generated to document activity in a case, transcripts filed with the clerk, documentary exhibits in the custody of the clerk, and electronic records, videotapes, or stenographic tapes of depositions or other proceedings filed with the clerk, and electronic records, videotapes, or stenographic tapes of court proceedings; and
(B) "administrative records," which are all other records made or received pursuant to court rule, law, or ordinance, or in connection with the transaction of official business by any judicial branch entity.
(2) "Judicial branch" means the judicial branch of government, which includes the state courts system, the clerk of court when acting as an arm of the court, The Florida Bar, the Florida Board of Bar Examiners, the Judicial Qualifications Commission, and all other entities established by or operating under the authority of the supreme court or the chief justice.
(3) "Custodian." The custodian of all administrative records of any court is the chief justice or chief judge of that court, except that each judge is the custodian of all records that are solely within the possession and control of that judge. As to all other records, the custodian is the official charged with the responsibility of maintaining the office having the care, keeping, and supervision of such records. All references to "custodian" mean the custodian or the custodians designee.
(c) Exemptions. The following records of the judicial branch shall be confidential:
(1) Trial and appellate court memoranda, drafts of opinions and orders, court conference records, notes, and other written materials of a similar nature prepared by judges or court staff acting on behalf of or at the direction of the court as part of the court's judicial decision-making process utilized in disposing of cases and controversies before Florida courts unless filed as a part of the court record;
(2) Memoranda or advisory opinions that relate to the administration of the court and that require confidentiality to protect a compelling governmental interest, including, but not limited to, maintaining court security, facilitating a criminal *168 investigation, or protecting public safety, which cannot be adequately protected by less restrictive measures. The degree, duration, and manner of confidentiality imposed shall be no broader than necessary to protect the compelling governmental interest involved, and a finding shall be made that no less restrictive measures are available to protect this interest. The decision that confidentiality is required with respect to such administrative memorandum or written advisory opinion shall be made by the chief judge;
(3) (A) Complaints alleging misconduct against judges until probable cause is established;
(B) Complaints alleging misconduct against other entities or individuals licensed or regulated by the courts, until a finding of probable cause or no probable cause is established, unless otherwise provided. Such finding should be made within the time limit set by law or rule. If no time limit is set, the finding should be made within a reasonable period of time;
(4) Periodic evaluations implemented solely to assist judges in improving their performance, all information gathered to form the bases for the evaluations, and the results generated therefrom;
(5) Only the names and qualifications of persons applying to serve or serving as unpaid volunteers to assist the court, at the court's request and direction, shall be accessible to the public. All other information contained in the applications by and evaluations of persons applying to serve or serving as unpaid volunteers shall be confidential unless made public by court order based upon a showing of materiality in a pending court proceeding or upon a showing of good cause;
(6) Copies of arrest and search warrants and supporting affidavits retained by judges, clerks, or other court personnel until execution of said warrants or until a determination is made by law enforcement authorities that execution cannot be made;
(7) All records made confidential under the Florida and United States Constitutions and Florida and federal law;
(8) All records presently deemed to be confidential by court rule, including the Rules for Admission to the Bar, by Florida Statutes, by prior case law of the State of Florida, and by the rules of the Judicial Qualifications Commission;
(9) Any court record determined to be confidential in case decision or court rule on the grounds that
(A) confidentiality is required to
(i) prevent a serious and imminent threat to the fair, impartial, and orderly administration of justice;
(ii) protect trade secrets;
(iii) protect a compelling governmental interest;
(iv) obtain evidence to determine legal issues in a case;
(v) avoid substantial injury to innocent third parties;
(vi) avoid substantial injury to a party by disclosure of matters protected by a common law or privacy right not generally inherent in the specific type of proceeding sought to be closed;
(vii) comply with established public policy set forth in the Florida or United States Constitution or statutes or Florida rules or case law;
(B) the degree, duration, and manner of confidentiality ordered by the court shall be no broader than necessary to protect the interests set forth in subdivision (A);
*169 (C) no less restrictive measures are available to protect the interests set forth in subdivision (A); and
(D) except as provided by law or rule of court, reasonable notice shall be given to the public of any order closing any court record.
(10) The names and any identifying information of judges mentioned in an advisory opinion of the Committee on Standards of Conduct for Judges.
(d) Review of Denial of Access Request. Expedited review of denials of access to records of the judicial branch shall be provided through an action for mandamus, or other appropriate appellate remedy, in the following manner:
(1) Where a judge who has denied a request for access to records is the custodian, the action shall be filed in the court having appellate jurisdiction to review the decisions of the judge denying access. Upon order issued by the appellate court, the judge denying access to records shall file a sealed copy of the requested records with the appellate court.
(2) All other actions under this rule shall be filed in the circuit court of the circuit in which such denial of access occurs.
(e) Procedure. Requests and responses to requests for access to records under this rule shall be made in a reasonable manner.
(1) Requests for access to records shall be in writing and shall be directed to the custodian. The request shall provide sufficient specificity to enable the custodian to identify the requested records. The reason for the request is not required to be disclosed.
(2) The custodian shall be solely responsible for providing access to records of the custodian's entity. The custodian shall determine whether the requested record is subject to this rule and, if so, whether the record or portions of the record are exempt from disclosure. The custodian shall determine the form in which the record is provided. If the request is denied, the custodian shall state in writing the basis for the denial.
(3) Fees for copies of records in all entities in the judicial branch of government, except for copies of court records, shall be the same as those provided in section 119.07, Florida Statutes (2001).

Committee Commentary
This rule was adopted to conform to the 1992 addition of article I, section 24, to the Florida Constitution. Amendments to this rule were adopted in response to the 1994 recommendations of the Study Committee on Confidentiality of Records of the Judicial Branch.
Subdivision (b) has been added by amendment and provides a definition of "judicial records" that is consistent with the definition of "court records" contained in rule 2.075(a)(1) and the definition of "public records" contained in chapter 119, Florida Statutes. The word "exhibits" used in this definition of judicial records is intended to refer only to documentary evidence and does not refer to tangible items of evidence such as firearms, narcotics, etc. Judicial records within this definition include all judicial records and data regardless of the form in which they are kept. Reformatting of information may be necessary to protect copyrighted material. Seigle v. Barry, 422 So.2d 63 (Fla. 4th DCA 1982), review denied, 431 So.2d 988 (Fla. 1983).
The definition of "judicial records" also includes official business information transmitted via an electronic mail (e-mail) system. The judicial branch is presently *170 experimenting with this new technology. For example, e-mail is currently being used by the judicial branch to transmit between judges and staff multiple matters in the courts including direct communications between judges and staff and other judges, proposed drafts of opinions and orders, memoranda concerning pending cases, proposed jury instructions, and even votes on proposed opinions. All of this type of information is exempt from public disclosure under rules 2.051(c)(1) and (c)(2). With few exceptions, these examples of e-mail transmissions are sent and received between judicial officials and employees within a particular court's jurisdiction. This type of e-mail is by its very nature almost always exempt from public record disclosure pursuant to rule 2.051(c). In addition, official business e-mail transmissions sent to or received by judicial officials or employees using dial-in equipment, as well as the use of on-line outside research facilities such as Westlaw, would also be exempt e-mail under rule 2.051(c). On the other hand, we recognize that not all e-mail sent and received within a particular court's jurisdiction will fall into an exception under rule 2.051(c). The fact that a non-exempt e-mail message made or received in connection with official court business is transmitted intra-court does not relieve judicial officials or employees from the obligation of properly having a record made of such messages so they will be available to the public similar to any other written communications. It appears that official business e-mail that is sent or received by persons outside a particular court's jurisdiction is largely non-exempt and is subject to recording in some form as a public record. Each court should develop a means to properly make a record of non-exempt official business e-mail by either electronically storing the mail or by making a hard copy. It is important to note that, although official business communicated by e-mail transmissions is a matter of public record under the rule, the exemptions provided in rule 2.051(c) exempt many of these judge/staff transmissions from the public record. E-mail may also include transmissions that are clearly not official business and are, consequently, not required to be recorded as a public record. Each court should also publish an e-mail address for public access. The individual e-mail addresses of judicial officials and staff are exempt under rule 2.051(c)(2) to protect the compelling interests of maintaining the uninterrupted use of the computer for research, word-processing, preparation of opinions, and communication during trials, and to ensure computer security.
Subdivision (c)(3) was amended by creating subparts (a) and (b) to distinguish between the provisions governing the confidentiality of complaints against judges and complaints against other individuals or entities licensed or regulated by the Supreme Court.
Subdivision (c)(5) was amended to make public the qualifications of persons applying to serve or serving the court as unpaid volunteers such as guardians ad litem, mediators, and arbitrators and to make public the applications and evaluations of such persons upon a showing of materiality in a pending court proceeding or upon a showing of good cause.
Subdivision (c)(9) has also been amended. Subdivision (c)(9) was adopted to incorporate the holdings of judicial decisions establishing that confidentiality may be required to protect the rights of defendants, litigants, or third parties; to further the administration of justice; or to otherwise promote a compelling governmental interest. Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla.1988); Miami Herald Publishing Co. v. Lewis, 426 *171 So.2d 1 (Fla.1982). Such confidentiality may be implemented by court rule, as well as by judicial decision, where necessary for the effective administration of justice. See, e.g., Fla.R.Crim.P. 3.470, (Sealed Verdict); Fla.R.Crim.P. 3.712, (Presentence Investigation Reports); Fla.R.Civ.P. 1.280(c), (Protective Orders).
Subdivision (c)(9)(D) requires that, except where otherwise provided by law or rule of court, reasonable notice shall be given to the public of any order closing a court record. This subdivision is not applicable to court proceedings. Unlike the closure of court proceedings, which has been held to require notice and hearing prior to closure, see Miami Herald Publishing Co. v. Lewis, 426 So.2d 1 (Fla. 1982), the closure of court records has not required prior notice. Requiring prior notice of closure of a court record may be impractical and burdensome in emergency circumstances or when closure of a court record requiring confidentiality is requested during a judicial proceeding. Providing reasonable notice to the public of the entry of a closure order and an opportunity to be heard on the closure issue adequately protects the competing interests of confidentiality and public access to judicial records. See Florida Freedom Newspapers, Inc. v. Sirmons, 508 So.2d 462 (Fla. 1st DCA 1987), approved, Barron v. Florida Freedom Newspapers, Inc., 531 So.2d 113 (Fla. 1988); State ex rel. Tallahassee Democrat v. Cooksey, 371 So.2d 207 (Fla. 1st DCA 1979). Subdivision (c)(9)(D), however, does not preclude the giving of prior notice of closure of a court record, and the court may elect to give prior notice in appropriate cases.

2002 Court Commentary
The custodian is required to provide access to or copies of records but is not required either to provide information from records or to create new records in response to a request. Op. Atty. Gen. Fla. 80-57 (1980); Wootton v. Cook, 590 So.2d 1039 (Fla. 1st DCA 1991); Seigle v. Barry, 422 So.2d 63 (Fla. 4th DCA 1982).
The writing requirement is not intended to disadvantage any person who may have difficulty writing a request; if any difficulty exists, the custodian should aid the requestor in reducing the request to writing.
It is anticipated that each judicial branch entity will have policies and procedures for responding to public records requests.
The 1995 commentary notes that the definition of "judicial records" added at that time is consistent with the definition of "court records" contained in rule 2.075(a)(1) and the definition of "public records" contained in chapter 119, Florida Statutes. Despite the commentary, these definitions are not the same. The definitions added in 2002 are intended to clarify that records of the judicial branch include court records as defined in rule 2.075(a)(1) and administrative records. The definition of records of the judicial branch is consistent with the definition of "public records" in chapter 119, Florida Statutes.

2005 Court Commentary
Under courts' inherent authority, appellate courts may appoint a special magistrate to serve as commissioner for the court to make findings of fact and oversee discovery in review proceedings under subdivision (d) of this rule. Cf.State ex rel. Davis v. City of Avon Park, 158 So. 159 (Fla.1934) (recognizing appellate courts' inherent authority to do all things reasonably necessary for administration of justice within the scope of courts' jurisdiction, including the appointment of a commissioner to make findings of fact);Wessells v. State, 737 So.2d 1103 (Fla. 1st DCA 1998) (relinquishing jurisdiction to circuit *172 court for appointment of a special master to serve as commissioner for court to make findings of fact).

RULE 2.060. ATTORNEYS
(a) Generally. All persons in good standing as members of The Florida Bar shall be permitted to practice in Florida. Attorneys of other states who are not members of The Florida Bar in good standing shall not engage in the practice of law in Florida except to the extent permitted by rule 2.061.
(b) Staff Attorneys, Law Clerks, and Judicial Assistants Persons Employed by the Court Not to Practice. Except as provided in this subdivision, no one serving as a staff attorney, law clerk, or judicial assistant to a justice or judge of any court-full-time employee of the court shall practice as an attorney in any court or before any agency of government while continuing in that position. Any attorney designated by the courtchief justice or chief judge may represent the court, any court employee in the employee's official capacity, or any judge in the judges official capacity, in any proceeding in which the court , employee, or judge is an interested party. An attorney formerly employed by a court shall not represent anyone in connection with a matter in which the attorney participated personally and substantially as a judicial staff attorney, law clerk, or judicial assistantwhile employed by the court, unless all parties to the proceeding consent after disclosure.
(c) Pleadings to Be Signed. Every pleading and other paper of a party represented by an attorney shall be signed by at least 1 attorney of record in that attorneys individual name whose address, telephone number, including area code, and Florida Bar number shall be stated, and who shall be duly licensed to practice law in Florida or who shall have received permission to appear in the particular case as provided in rule 2.061. The attorney may be required by the court to give the address of, and to vouch for the attorneys authority to represent, the party. Except when otherwise specifically provided by an applicable rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorneys knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken and the action may proceed as though the pleading or other paper had not been served.
(d) Party Not Represented by Attorney to Sign. A party who is not represented by an attorney shall sign any pleading or other paper and state the party's address and telephone number, including area code.
(e) Form of Signature of Attorney, Party, or Other Person.
(1) The signatures required on pleadings and papers by subdivisions (c) and (d) of this rule may be:
(A) original signatures;
(B) original signatures that have been reproduced by electronic means, such as on electronically transmitted documents or photocopied documents; or
(C) any other signature format authorized by general law, so long as the clerk where the proceeding is pending has the capability of receiving and has obtained approval from the Supreme Court of Florida to accept pleadings and papers with that signature format.
(2) An attorney, party, or other person who files a pleading or paper by electronic *173 transmission that does not contain the original signature of that attorney, party, or other person shall file that identical pleading or paper in paper form containing an original signature of that attorney, party, or other person (hereinafter called the follow-up filing) immediately thereafter. The follow-up filing is not required if the Supreme Court of Florida has entered an order directing the clerk of court to discontinue accepting the follow-up filing.
(f) Attorney Not to Be Surety. No attorneys or other officers of court shall enter themselves or be taken as bail or surety in any proceeding in court.
(g) Stipulations. No private agreement or consent between parties or their attorneys concerning the practice or procedure in an action shall be of any force unless the evidence of it is in writing, subscribed by the party or the party's attorney against whom it is alleged. Parol agreements may be made before the court if promptly made a part of the record or incorporated in the stenographic notes of the proceedings, and agreements made at depositions that are incorporated in the transcript need not be signed when signing of the deposition is waived. This rule shall not apply to settlements or other substantive agreements.
(h) Appearance of Attorney. An attorney may appear in a proceeding in any of the following ways:
(1) By serving and filing, on behalf of a party, the party's first pleading or paper in the proceeding.
(2) By substitution of counsel, but only by order of court and with written consent of the client, filed with the court. The court may condition substitution upon payment of, or security for, the substituted attorney's fees and expenses, or upon such other terms as may be just.
(3) By filing with the court and serving upon all parties a notice of appearance as counsel for a party that has already appeared in a proceeding pro se or as co-counsel for a party that has already appeared in a proceeding by non-withdrawing counsel.
(i) Termination of Appearance of Attorney. The appearance of an attorney for a party in a proceeding shall terminate only in one of the following ways:
(1) Withdrawal of Attorney. By order of court, where the proceeding is continuing, upon motion and hearing, on notice to all parties and the client, such motion setting forth the reasons for withdrawal and the client's last known address.
(2) Substitution of Attorney. By order of court, under the procedure set forth in subdivision (h)(2) of this rule.
(3) Termination of Proceeding. Automatically, without order of court, upon the termination of a proceeding, whether by final order of dismissal, by final adjudication, or otherwise, and following the expiration of any applicable time for appeal, where no appeal is taken.
(4) Filing of Notice of Completion. For limited representation proceedings under Florida Family Law Rule of Procedure 12.040, automatically, by the filing of a notice of completion titled "Termination of Limited Appearance" pursuant to rule 12.040(c).
(j) Law Student Participation. Eligible law students shall be permitted to participate as provided under the conditions of chapter 11 of the Rules Regulating The Florida Bar as amended from time to time.
(k) Attorney as Agent of Client. In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the agent of the client, and any notice by or to the attorney *174 or act by the attorney in the proceeding shall be accepted as the act of or notice to the client.

Court Commentary
1997 Amendment. Originally, the rule provided that the follow-up filing had to occur within ten days. In the 1997 amendment to the rule, that requirement was modified to provide that the follow-up filing must occur "immediately" after a document is electronically filed. The "immediately thereafter" language is consistent with language used in the rules of procedure where, in a somewhat analogous situation, the filing of a document may occur after service. See, e.g., Florida Rule of Civil Procedure 1.080(d) ("All original papers shall be filed with the court either before service or immediately thereafter.") (emphasis added). "Immediately thereafter" has been interpreted to mean "filed with reasonable promptness." Miami Transit Co. v. Ford, 155 So.2d 360 (Fla. 1963).
The use of the words "other person" in this rule is not meant to allow a nonlawyer to sign and file pleadings or other papers on behalf of another. Such conduct would constitute the unauthorized practice of law.
2003 Amendment. Rule Regulating the Florida Bar 4-1.12(c), which addresses the imputed disqualification of a law firm, should be looked to in conjunction with the rule 2.060(b) restriction on representation by a former judicial staff attorney or law clerk.

RULE 2.071. USE OF COMMUNICATION EQUIPMENT
(a) Definition. Communication equipment means a conference telephone or other electronic device that permits all those appearing or participating to hear and speak to each other, provided that all conversation of all parties is audible to all persons present.
(b) Use by All Parties. A county or circuit court judge may, upon the court's own motion or upon the written request of a party, direct that communication equipment be used for a motion hearing, pretrial conference, or a status conference. A judge must give notice to the parties and consider any objections they may have to the use of communication equipment before directing that communication equipment be used. The decision to use communication equipment over the objection of parties will be in the sound discretion of the trial court, except as noted below.
(c) Use Only by Requesting Party. A county or circuit court judge may, upon the written request of a party upon reasonable notice to all other parties, permit a requesting party to participate through communication equipment in a scheduled motion hearing; however, any such request (except in criminal, delinquencyjuvenile, and appellate proceedings) must be granted, absent a showing of good cause to deny the same, where the hearing is set for not longer than 15 minutes.
(d) Testimony.
(1) Generally. A county or circuit court judge may, if all the parties consent, allow testimony to be taken through communication equipment.
(2) Procedure. Any party desiring to present testimony through communication equipment shall, prior to the hearing or trial at which the testimony is to be presented, contact all parties to determine whether each party consents to this form of testimony. The party seeking to present the testimony shall move for permission to present testimony through communication equipment, which motion shall set forth good cause as to why the testimony should be allowed in this form.
*175 (3) Oath. Testimony may be taken through communication equipment only if a notary public or other person authorized to administer oaths in the witness's jurisdiction is present with the witness and administers the oath consistent with the laws of the jurisdiction.
(4) Confrontation Rights. In juvenile and criminal proceedings the defendant must make an informed waiver of any confrontation rights that may be abridged by the use of communication equipment.
(5) Video Testimony. If the testimony to be presented utilizes video conferencing or comparable two-way visual capabilities, the court in its discretion may modify the procedures set forth in this rule to accommodate the technology utilized.
(e) Burden of Expense. The cost for the use of the communication equipment is the responsibility of the requesting party unless otherwise directed by the court.
(f) Petition to Override Family Violence Indicator. Communications equipment may be used for a hearing on a petition to override a family violence indicator under Florida Family Law Rule of Procedure 12.650.

RULE 2.085. CASE MANAGEMENT AND TIME STANDARDS FOR TRIAL AND APPELLATE COURTS
(a) Purpose. Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case.
(b) Case Control. The trial judge shall take charge of all cases at an early stage in the litigation and shall control the progress of the case thereafter until the case is determined. The trial judge shall take specific steps to monitor and control the pace of litigation, including the following:
(1) assuming early and continuous control of the court calendar;
(2) identifying priority cases as assigned by statute, rule of procedure, case law, or otherwise;
(3) implementing such docket control policies as may be necessary to advance priority cases to ensure prompt resolution;
(4) identifying cases subject to alternative dispute resolution processes;
(5) developing rational and effective trial setting policies; and
(6) advancing the trial setting of priority cases, older cases, and cases of greater urgency.
(c) Priority Cases.
(1) In all noncriminal cases assigned a priority status by statute, rule of procedure, case law, or otherwise, any party may file a notice of priority status explaining the nature of the case, the source of the priority status, any deadlines imposed by law on any aspect of the case, and any unusual factors that may bear on meeting the imposed deadlines.
(2) If, in any noncriminal case assigned a priority status by statute, rule of procedure, case law, or otherwise, a party is of the good faith opinion that the case has not been appropriately advanced on the docket or has not received priority in scheduling consistent with its priority case status, that party may seek review of such action by motion for review to the chief judge or to the chief judge's designee. The filing of such a motion for review will not toll the time for seeking such other relief as may be afforded by the Florida Rules of Appellate Procedure.
(d) Related Cases.
(1) The petitioner in a family case shall file with the court a notice of related cases, if related cases are known or reasonably ascertainable. A case is related when:
*176 (A) it involves any of the same parties, children, or issues and it is pending at the time the party files a family case; or
(B) it affects the court's jurisdiction to proceed; or
(C) an order in the related case may conflict with an order on the same issues in the new case; or
(D) an order in the new case may conflict with an order in the earlier litigation.
(2) "Family cases" include dissolution of marriage, annulment, support unconnected with dissolution of marriage, paternity, child support, UIFSA, custodial care of and access to children, adoption, name change, declaratory judgment actions related to premarital, marital, or postmarital agreements, civil domestic, repeat violence, dating violence, and sexual violence injunctions, juvenile dependency, termination of parental rights, juvenile delinquency, emancipation of a minor, CINS/FINS, truancy, and modification and enforcement of orders entered in these cases.
(3) The notice of related cases shall identify the caption and case number of the related case, contain a brief statement of the relationship of the actions, and contain a statement addressing whether assignment to one judge or another method of coordination will conserve judicial resources and promote an efficient determination of the actions.
(4) The notice of related cases shall be filed with the initial pleading by the filing attorney or self-represented petitioner.
(5) Each party has a continuing duty to inform the court of any proceedings in this or any other state that could affect the current proceeding.
(6) Whenever it appears to a party that two or more pending cases present common issues of fact and that assignment to one judge or another method of coordination will significantly promote the efficient administration of justice, conserve judicial resources, avoid inconsistent results, or prevent multiple court appearances by the same parties on the same issues, the party may file a notice of related cases requesting coordination of the litigation.
(7) The notice of related cases shall be served on all parties in the related cases, the presiding judges, and the chief judge or family law administrative judge.
(de) Continuances. All judges shall apply a firm continuance policy. Continuances should be few, good cause should be required, and all requests should be heard and resolved by a judge. All motions for continuance shall be in writing unless made at a trial and, except for good cause shown, shall be signed by the party requesting the continuance. All motions for continuance in priority cases shall clearly identify such priority status and explain what effect the motion will have on the progress of the case.
(ef) Time Standards. The following time standards are hereby established as a presumptively reasonable time period for the completion of cases in the trial and appellate courts of this state. It is recognized that there are cases that, because of their complexity, present problems that cause reasonable delays. However, most cases should be completed within the following time periods:
(1) Trial Court Time Standards.
(A) Criminal.
Felony180 days (arrest to final disposition)
Misdemeanor90 days (arrest to final disposition)
(B) Civil.
*177 Jury cases18 months (filing to final disposition)
Non-jury cases12 months (filing to final disposition)
Small claims95 days (filing to final disposition)
(C) Domestic Relations.
Uncontested90 days (filing to final disposition)
Contested180 days (filing to final disposition)
(D) Probate.
Uncontested, no federal estate tax return  12 months (from issuance of letters of administration to final discharge)
Uncontested, with federal estate tax return  12 months (from the returns due date to final discharge)
Contested24 months (from filing to final discharge)
(E) Juvenile Delinquency.
Disposition hearing120 days (filing of petition or child being taken into custody to hearing)
Disposition hearing (child detained)36 days (date of detention to hearing)
(F) Juvenile Dependency.
Disposition hearing (child sheltered)88 days (shelter hearing to disposition)
Disposition hearing (child not sheltered)120 days (filing of petition for dependency to hearing)
(G) Permanency Proceedings.
Permanency hearing  12 months (date child is sheltered to hearing)
(2) Supreme Court and District Courts of Appeal Time Standards: Rendering a decision  within 180 days of either oral argument or the submission of the case to the court panel for a decision without oral argument
(3) Florida Bar Referee Time Standards: Report of referee  within 180 days of being assigned to hear the case
(4) Circuit Court Acting as Appellate Court:
Ninety days from submission of the case to the judge for review
(fg) Reporting of Cases. The time standards require that the following monitoring procedures be implemented:
All pending cases in circuit and district courts of appeal exceeding the time standards shall be listed separately on a report submitted quarterly to the chief justice. The report shall include for each case listed the case number, type of case, case status (active or inactive for civil cases and contested or uncontested for domestic relations and probate cases), the date of arrest in criminal cases, and the original filing date in civil cases. The Office of the State Courts Administrator will provide the necessary forms for submission of this data. The report will be due on the 15th day of the month following the last day of the quarter.

RULE 2.130. PROCEDURE FOR AMENDING RULES
(a) Emergency Amendments. The supreme court, with or without notice, may change court rules at any time if an emergency exists that does not permit reference to the appropriate committee of The Florida Bar for recommendations. If a change is made without reference to the committee, the change may become effective immediately or at a future time. In either event, the court shall fix a date for further consideration of the change. Any person may file comments concerning the change, seeking its abrogation or a delay in the effective date, in accordance with the procedures set forth in subdivision *178 (c)(6) of this rule. The court may allow oral argument in support of such comments by The Florida Bar, by its sections and committees, and by other bar associations. Notice of the hearing on the change and a copy of the change shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. The change shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(b) Amendments Generally. The following procedure shall be followed for consideration of rule amendments generally other than those adopted under subdivisions (a), (e), and (f):
(1) Proposals for court rules, amendments to them, or abrogation of them may be made by any person.
(2) Proposals shall be submitted to the clerk of the supreme court in writing and shall include a general description of the proposed rule change or a specified proposed change in content. The clerk of the supreme court shall refer proposals to the appropriate committee under subdivision (b)(3).
(3) The Florida Bar shall appoint the following committees to consider rule proposals: Civil Procedure Rules Committee, Criminal Procedure Rules Committee, Small Claims Rules Committee, Traffic Court Rules Committee, Appellate Court Rules Committee, Juvenile Court Rules Committee, Code and Rules of Evidence Committee, Rules of Judicial Administration Committee, Probate Rules Committee, Workers' Compensation Rules Committee, and Family Law Rules Committee.
(4) Each committee shall be composed of attorneys and judges with extensive experience and training in the area of practice of the committee calling for regular, frequent use of the rules. The members of the committee shall serve for 3-year staggered terms. The president of The Florida Bar shall appoint the chair and vice chair of each committee.
(5) The Rules of Judicial Administration Committee shall also serve as a rules coordinating committee. Each rules committee shall have at least 1 of its members appointed to the Rules of Judicial Administration Committee to serve as liaison. All proposed rules changes shall be submitted to the Rules of Judicial Administration Committee, which shall then refer all proposed rules changes to those rules committees that might be affected by the proposed change. All proposed changes shall be submitted by June 3015 of each year of the rules cycle.
(6) The committees shall consider and vote on each proposal. The committees may originate proposals and are charged with the duty of regular review and reevaluation of the rules to advance orderly and inexpensive procedures in the administration of justice. The committees may accept or reject proposed amendments or may amend proposals. The committees shall keep minutes of their activities, which minutes shall reflect the action taken on *179 each proposal. Copies of the minutes shall be furnished to the clerk of the supreme court, to the board of governors of The Florida Bar, and to the proponent of any proposal considered at the meeting.
(c) Schedule for Rule Proposals.
(1) Each committee shall report all proposed rule changes on a biannual basis (with the first cycle starting in 2002). Reports shall be made in even-numbered years by the Appellate Court Rules Committee, the Criminal Procedure Rules Committee, the Code and Rules of Evidence Committee, the Juvenile Court Rules Committee, the Traffic Court Rules Committee, and the Workers' Compensation Rules Committee. Reports shall be made in odd-numbered years by the Civil Procedure Rules Committee, the Family Law Rules Committee, the Probate Rules Committee, the Rules of Judicial Administration Committee, and the Small Claims Rules Committee.
(1) Each committee shall report all proposed rule changes on a staggered basis (with the first cycle starting in 2006). Reports shall be made by the Criminal Procedure Rules Committee, the Traffic Court Rules Committee, and the Juvenile Court Rules Committee in 2006; by the Civil Procedure Rules Committee, the Probate Rules Committee, the Small Claims Rules Committee, and the Code and Rules of Evidence Committee in 2007; and by the Family Law Rules Committee, the Appellate Court Rules Committee, and the Rules of Judicial Administration Committee in 2008. Thereafter, the cycle shall repeat.
(2) No later than October 1June 15 of the year prior to each reporting year or such other date as the board of governors of The Florida Bar may set, each reporting committee shall submit all proposed rule changes to the board of governors with the committees final numerical voting record on each proposal. Contemporaneously with reporting proposed rule changes to the board of governors, each committee report shall be furnished to the Speaker of the Florida House of Representatives, the President of the Florida Senate, and the chairs of the House and Senate committees as designated by the Speaker and the President, and published on the Internet website of The Florida Bar, and in the Florida Bar Journal or Florida Bar News. Any person desiring to comment upon proposed rule changes shall submit written comments to the appropriate committee chair no later than NovemberAugust 1 of the year prior to each reporting year. Each committee shall consider any comments submitted and thereafter report to the board of governors, no later than December 1October 15 of the year prior to each reporting year, any revisions to the proposed rule changes. Contemporaneously with reporting any revisions to the board of governors, each committees revised proposed rule changes shall be furnished to the Speaker of the Florida House of Representatives, the President of the Florida Senate, and the chairs of the House and Senate committees as designated by the Speaker and the President, and published on the Internet website of The Florida Bar, and in the Florida Bar Journal or Florida Bar News.Any person desiring to comment thereafter shall submit written comments to the supreme court in accordance with subdivision (c)(6).
(3) No later than January 1December 15 of the year prior to each reporting year, the board of governors shall consider the proposals and shall vote on each proposal to recommend acceptance, rejection, or amendment.
(4) No later than February 1 of each reporting year, each committee shall file a *180 report of its proposed rule changes with the supreme court. Each committee may amend its recommendations to coincide with the recommendations of the board of governors or may decline to do so or may amend its recommendations in another manner. Any such amendments shall also be reported to the supreme court. The report shall include:
(A) a list of the proposed changes, together with a detailed explanation of each proposal and the name and address of the proponent of each change if other than the rules committee;
(B) the final numerical voting record of the proposals in the committee;
(C) a report of the action taken by the committee on comments submitted in accordance with subdivision (c)(2);
(D) a report of the action and voting record of the board of governors;
(E) any dissenting views of the committee and, if available, of the board; and
(F) an appendix containing all comments submitted to the committee and a two-column chart setting forth the proposed changes in legislative format in the first column and a brief explanation of each change in the second column.
The report and the proposed rule changes shall be filed with the supreme court, in legislative format, both on paper and in an electronic format approved by the supreme court.
(5) If oral argument is deemed necessary, the supreme court shall establish a date during the month of May or June of each reporting year for oral argument on the proposals. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. If the committee modifies its recommendations after considering comments submitted in accordance with subdivision (c)(2), the recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar and in the Florida Bar Journal or Florida Bar News.
(6) Before the date of oral argument, any person may file comments concerning the proposals. All comments and other submissions by interested persons shall be filed with the clerk of the supreme court and served on the chair of the appropriate rules committee, and on the proponent of the rule change if other than the rules committee. The chair of the rules committee shall file a response to all comments within the time period set by the court. All comments and other submissions regarding the rule change proposals, in addition to being filed with the supreme court in paper format, shall also be filed in an electronic format approved by the supreme court. Prior to the date of oral argument and as soon as practicable after the date of filing, the clerk of the supreme court shall publish on the Internet websites of the supreme court and The Florida Bar, all comments and the responses of the chair of the rules committee that have been filed *181 concerning the rule change proposals. All requests or submissions by a rules committee made in connection with a pending rule change proposal shall be filed with the clerk of the supreme court and thereafter published by the clerk of the supreme court on the Internet websites of the supreme court and The Florida Bar.
(7) Orders of the supreme court on said proposals should be adopted in sufficient time to take effect on January 1 of the year following the reporting year. The supreme court may permit motions for rehearing to be filed on behalf of any person, The Florida Bar, any bar association, and the affected committee.
(d) Rejected Proposals. If a committee rejects a proposal, the proponent may submit the proposed rule to the board of governors and shall notify the chair and vice chair of the affected committee of the submission of the proposed rule to the board of governors. Minority reports of committees are allowed and may be submitted to both the board of governors and the supreme court.
(e) Emergency Recommendation by Committee. If, in the opinion of a committee, a proposal is of an emergency nature, and the board of governors concurs, proposals may be made at any time to the supreme court. If the court agrees that an emergency exists, the court may set a time for oral argument and consideration of the proposal. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. The recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(f) Request by Court. The supreme court may direct special consideration of a proposal at times other than those specified in this rule and may require a committee to report its recommendation with the recommendations of the board of governors. All requests or submissions by a rules committee made in connection with a request under this subdivision shall be filed with the clerk of the supreme court. The supreme court may set oral argument on the report at any time. Notice of the hearing on the proposals and a copy of the proposals shall be furnished to the affected committee chair and vice chair, the executive director of The Florida Bar, all members of the Judicial Management Council, the clerk and chief judge of each district court of appeal, the clerk and chief judge of each judicial circuit, the Speaker of the Florida House of Representatives, the President of the Florida Senate, the chairs of the House and Senate committees as designated by the Speaker and the President, and any person who has asked in writing filed with the clerk of the supreme court for a copy of the notice. The clerk may provide the notice electronically. The recommendations or a resume of them shall be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida *182 Bar News before the hearing. Notice of the hearing shall also be published on the Internet websites of the supreme court and The Florida Bar, and in the Florida Bar Journal or Florida Bar News.
(g) Local Rules Proposed by Trial Courts. The foregoing procedure shall not apply to local rules proposed by a majority of circuit and county judges in the circuit. The chief justice of the supreme court may appoint a Local Rule Advisory Committee to consider and make recommendations to the court concerning local rules and administrative orders submitted pursuant to rule 2.050(e).

Committee Notes
1980 Amendment. Rule 2.130 is entirely rewritten to codify the procedures for changes to all Florida rules of procedure as set forth by this court in In re Rules of Court: Procedure for Consideration of Proposals Concerning Practice and Procedure, 276 So.2d 467 (Fla.1972), and to update those procedures based on current practice. The Supreme Court Rules Advisory Committee has been abolished, and the Local Rules Advisory Committee has been established.
NOTES
[1] Media General Operations, Inc., publishes The Tampa Tribune and operates WFLA-TV.
[2] Media General Operations also recommends that rule 2.051(c)(3)(A)(complaints alleging misconduct against judges are exempt from disclosure until probable cause is established) be amended to require complaints of misconduct against a judge be referred to the Judicial Qualifications Commission (JQC). This suggestion is beyond the scope of the proposals before the Court in this case. However, we note that, after the Court's decision in Media General Convergence, policies and procedures for complaints of sexual harassment against judges were approved by administrative order. See Administrative Order, In re: Sexual Harassment Policy and Procedures for Complaints against Trial Court Judges, AOSC04-8 (March 25, 2004) (approving policy requiring the chief judge to refer the complaint and all written documentation pertaining to the complaint to the JQC if the complaint and investigation raise a substantial question as to a judge's fitness for office); Administrative Order, In re: Sexual Harassment Policy and Procedures for Complaints against Justices, AOSC04-7 (March 25, 2004) (approving similar policy for complaints against justices of this Court).
[3] The Steering Committee on Families and Children in the Court, which was formerly know as the Family Court Steering Committee, submitted the new related cases rule to the Rules Committee.
[4] See Amendments to Fla. Rules of Jud. Admin., 780 So.2d 819 (Fla.2000).
[5] Proposed new rule 2.170(b) would provide:

Photographing Jurors' Faces. It shall be within the sound discretion and authority of the trial judge to prohibit the photographing, either by movie, video, or still camera, of the faces of the prospective or seated jurors, either individually, jointly, or collectively. Such prohibition shall not be construed as an exclusion of electronic media coverage or as exclusion of coverage of a particular participant, and no evidentiary hearing shall be required.
[6] Cable News Network LP, LLLP (CNN); The E.W. Scripps Companies' properties in Florida, including WFTS (TampaSt.Petersburg), WPTV (West Palm Beach), the Naples Daily News, the Stuart News, The Tribune (Fort Pierce), and the Vero Beach Press Journal; Media General Operations, Inc., d/b/a The Tampa Tribune and WFLA-TV (Tampa-St.Petersburg); Post-Newsweek Stations Florida, Inc., d/b/a WPLG/Channel 10 (Miami-Fort Lauderdale), WJXT (Jacksonville) and WKMG (Orlando); and Sunbeam Television Corporation, d/b/a WSVN/Channel 7 (Miami-Fort Lauderdale) filed a joint comment opposing this amendment.
[7] See Chavez v. State, 832 So.2d 730 (Fla. 2002) (in rejecting claim that trial court deprived defendant of fair trial by reversing ruling prohibiting the photographing of jurors, the Court noted that when determining whether media access will be restricted, trial courts must provide notice and an opportunity for the media to be heard); WFTV, Inc. v. State, 704 So.2d 188 (Fla. 4th DCA 1997) (holding that trial court erred by prohibiting the photographing of jurors without giving media notice and opportunity to be heard and making required findings); see also State v. Green, 395 So.2d 532 (Fla.1981); State v. Palm Beach Newspapers, Inc., 395 So.2d 544 (Fla.1981); In re Post-Newsweek Stations of Fla., Inc., 370 So.2d 764, 779 (Fla.1979).